ROMANA PÉREZ HERNÁNDEZ, conocida por ROMANA TORRES HERNÁNDEZ, peticionaria y apelante; EX PARTE.

Núm. 9225.—*Sometido:* Diciembre 26, 1945. *Resuelto:* Abril 24, 1946.

*R. A. Arroyo Ríos,* abogado de la apelante.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA emitió la opinión del tribunal.

Romana Pérez apela de la resolución de una corte de distrito declarando sin lugar una información para perpetua memoria.

De la solicitud y de la prueba resulta que Romana Pérez es hija legítima de Luis Pérez, según consta en la inscripción de su nacimiento en el Registro. Civil. No obstante a la peticionaria se le conoce por Romana Torres, porque a su padre se le conocía por Luis Torres. Romana tiene hijos, de su matrimonio con Pablo Flecha, que aparecen inscritos con los apellidos Flecha Torres. Sus hijos están, o estaban al radicarse la solicitud, en el ejército. La diferencia entre el apellido con que aparece inscrita la peticionaria y el apellido con que se le conoce, con el cual se casó, y con el cual aparecen inscritos sus hijos, ha ocasionado trastornos a la peticionaria, quien desconocía hasta poco antes de radicar su solicitud que

estuviese inscrita en el Registro Civil con un apellido distinto al que siempre ostentaron tanto sus padre y sus hijos, como ella.

La solicitud de la apelante pide que luego de practicada la prueba y oído el fiscal se apruebe la información y se ordene la enmienda de la inscripción del nacimiento de la peticionaria, en el sentido de cambiar su apellido de Pérez a Torres. En el acto de la vista el abogado de la peticionaria solicitó que, si no procedía la enmienda se ordenara que en la inscripción del nacimiento se hiciera constar que a la peticionaria se le conocía por Torres.

Practicada la prueba, con intervención del fiscal, cuyo dictamen no aparece de los autos, pero cuya actitud durante la vista fué hostil a la pretensión de la peticionaria, la corte declaró sin lugar la información, porque "entendemos que se trata de una filiación, pues cambiar el apellido que lleva una persona, o sea, su verdadero, por otro, nos parece que no está autorizado por este procedimiento."

Sostiene la apelante que la corte erró al estimar que no procede ordenar, o reconocer, el cambio de apellido de una persona, en una información *ad perpetuam memoriam.*

■■ La finalidad del expediente *ad perpetuam rei memoriam* es el de perpetuar la memoria de un hecho, o sea, el acreditar solemnemente ese hecho, cuando existe el riesgo de que la prueba del mismo pueda perderse, por la ausencia o muerte de los testigos o por otras razones. Los artículos 2001 al 2009 de la Ley de Enjuiciamiento Civil para las Islas de Cuba y Puerto Rico, aprobada el 25 de septiembre de 1885, autorizan y reglamentan el procedimiento *ad perpetuam,* limitándolo a hechos que no perjudiquen a persona cierta y determinada. Dichos artículos aún están en vigor en Puerto Rico, por no estar en conflicto con las disposiciones del Código de Enjuiciamiento Civil de 1904. Es bueno apuntar que tampoco están en conflicto con la Regla 27 de las Reglas de Enjuiciamiento Civil de septiembre 1 de 1943, que dispone un

procedimiento para perpetuar testimonio en casos contenciosos,([1]) ya que la regla cubre un campo que está vedado a la información *ad perpetuam*,([2]) y ésta a su vez es aplicable a asuntos donde no quepa perjuicio a tercero, asuntos donde no procede la toma de deposiciones de que se ocupa la Regla 27, pudiendo más bien decirse que la Regla 27, procedente del sistema de derecho anglo-sajón, viene a complementar el procedimiento para perpetuar testimonio, de origen hispano, que ya regía en Puerto Rico.

De acuerdo con el artículo 2001 de la Ley de Enjuiciamiento Civil de 1885 la información *ad perpetuam* cabe para perpetuar cualquier hecho, con tal que no resulte perjuicio a una persona cierta y determinada. Si resulta o pudiera resultar perjuicio a alguna persona, no debe admitirse la información.([3]) Pero aunque se admita la información, si luego resulta que ésta perjudica a alguna persona carece de efecto en cuanto a ella la providencia aprobatoria.([4])

En el caso de autos, la peticionaria pretende perpetuar el hecho de que a ella siempre se le ha conocido por Romana Torres. Ese hecho resulta elocuentemente de la prueba, particularmente de la declaración de la peticionaria. Del expediente no surge que ese hecho perjudique a persona alguna. Aparentemente la corte inferior creyó que, de perpetuarse el testimonio de que a la peticionaria se le conoce por el apellido Torres, ello equivaldría a determinar que su padre, Luis

---

([1]) El procedimiento que prescribe la Regla 27 es el de la toma de deposiciones con audiencia de ambas partes. Véase 5 Wigmore, *Evidence*, 3ra. Ed. 73. El apartado (c) de la regla dispone que ésta "no limita la facultad que tienen las cortes para conocer de las acciones para perpetuar testimonios". Pero las "acciones para perpetuar testimonios" de que habla la regla son también acciones contenciosas, a saber, los pleitos en equidad para perpetuar testimonio. 2 Moore's *Federal Practice under the New Rules* 2540; 1 Pomeroy, *Equity Jurisprudence*, 5th Ed. 358; *Arizona v. California*, 292 U.S. 341, 78 L. Ed. 1298.

([2]) Véase *Sucesión Vázquez* v. *Registrador*, 40 D.P.R. 893.

([3]) Véase la sentencia del Tribunal Supremo de España de 27 de junio de 1864 (9 J.C. 545), que dice que la información *ad perpetuam* no procede para acreditar la mujer la entrega de su dote al marido.

([4]) *Sucesión Vázquez* v. *Registrador*, 40 D.P.R. 893; Sentencias del Tribunal Supremo de España de 27 de junio de 1864 (9 J.C. 545) y 30 de diciembre de 1914 (131 J.C. 1093).

Pérez, también conocido por Torres, fué hijo natural de algún Torres, lo que vendría a establecer la filiación de Luis Pérez. No es así. Ni el uso de un apellido, ni la inscripción de ese apellido en el Registro Civil, establece la filiación natural. Es la filiación paterna, una vez establecida, la que da derecho al uso del apellido paterno por el hijo natural. Y mal puede estimarse que en el caso de autos el uso por la peticionaria del apellido Torres, ni aun su inscripción en el registro con tal apellido, le afilie con algún Torres como abuelo paterno, por ser el apellido Torres tan corriente, y no aparecer, ni de los autos ni del registro civil el nombre de persona alguna que pueda reputarse abuelo paterno de la peticionaria.

No existe, pues, el obstáculo a la solicitud de la peticionaria que creyó encontrar la corte inferior, o sea, el que se pudiera perjudicar a alguna otra persona. Otro obstáculo que encontró la corte es que en Puerto Rico no existe estatuto que autorice el cambio de nombres o apellidos. Es verdad. Existió una vez un procedimiento para el cambio de nombres y apellidos, el estatuído en los artículos 90 a 95, inclusive, del Reglamento para la Ejecución de la Ley de Registro Civil de Cuba y Puerto Rico, aprobado el 6 de noviembre de 1884,([5]) pero ese procedimiento quedó derogado, sino por efecto del cambio de soberanía en 1898,([6]) por la Ley de Registro Civil de 1911 que derogó la anterior de 1884. Ni en la Ley de Registro Civil de 1911, ni en la Ley del Registro Demográfico de 1931 que vino a sustituirle, ni en ninguna otra ley, se autoriza procedimiento alguno para cambiar nombres o apellidos, en el registro civil de ayer o en el registro demográfico de hoy.([7])

---

([5])Véase la Gaceta de Madrid de 17 de noviembre, 1884.

([6])De acuerdo con el reglamento citado, el cambio de nombre sólo lo podía ordenar el Rey de España, a propuesta del Ministerio de Ultramar, luego de practicados los trámites judiciales en Puerto Rico.

([7])La ley de Registro Civil de 1911 (Leyes de 1911, pág. 197), si bien no disponía un procedimiento para el cambio de nombre, en su artículo 18 incluía, entre los actos que podrían anotarse al margen de la inscripción de nacimiento, el cambio de nombre y de apellido. La Ley de Registro Demográfico no contiene una disposición igual o equivalente.

■ Dentro de los estrechos límites de la información *ad perpetuam* no cabe una orden disponiendo el cambio de un nombre o apellido. Todo lo que cabe es una providencia que disponga se perpetúe el testimonio. Así lo estatuye el artículo 2006 de la Ley de Enjuiciamiento Civil de 1885, que reza así:

"Art. 2006. Pidiendo el Promotor fiscal que se apruebe la información, y hallándolo procedente el Juez, dictará auto aprobándola cuanto ha lugar en derecho, y mandando, si se refiere a hechos de reconocida importancia, que se protocolice en los registros del actuario si éste fuere también Notario y no siéndolo, en los de otro que resida en el pueblo cabeza del partido, a elección de la parte interesada, habiendo más de uno.

"Si los hechos a que se haya referido la información no fueran de reconocida importancia, el Juez mandará que se archive en el oficio del actuario."

Sabemos que, como indica la corte inferior en su resolución, en Puerto Rico se ha venido utilizando la información *ad perpetuam* para llevar a cabo cambios de nombres. La existencia de esa práctica es precisamente lo que nos ha llevado a hacer un estudio minucioso en busca de su justificación en nuestra legislación y nuestra historia. No hemos podido encontrar base adecuada para la práctica, y carecemos de facultad para sancionarla, en vista de que está en conflicto con la legislación en que pretende ampararse, a saber, las disposiciones de la Ley de Enjuiciamiento Civil que acabamos de copiar, y carece de apoyo alguno en los preceptos de la Ley del Registro Demográfico. A la Legislatura incumbe actuar para corregir lo que entendemos es un defecto en nuestra legislación. Debe existir un procedimiento sencillo para autorizar o reconocer el cambio de nombres y apellidos en casos adecuados, como existe en los estados de la Unión americana, y como existía en Puerto Rico bajo la soberanía española. En este respecto, nuestra legislación parece haber retrocedido del siglo diecinueve para acá.

■ Aunque la corte estimó correctamente que no procedía ordenar el cambio del apellido de la peticionaria en el Registro Demográfico, erró al declarar sin lugar la información *ad perpetuam,* o sea, al negarse a ordenar se perpetuara el testimonio de la peticionaria de acuerdo con el artículo 2006 que cabamos de copiar.([8])

Podría objetarse que de nada sirve perpetuar el testimonio en cuanto al nombre de la peticionaria, si no se puede cambiar el nombre en el registro. A eso tenemos dos contestaciones. En primer lugar, la finalidad de la información ad perpetuam es sencillamente perpetuar el testimonio. No es pertinente considerar el uso que habrá de darse en el futuro al testimonio perpetuado excepto a los únicos fines de determinar si ha de perjudicar a alguna otra persona. Procede por lo tanto la aprobación de la información en este caso aunque no pueda darse paso ulterior alguno en el Registro Demográfico. Ahora bien, entendemos que la peticionaria puede hacer uso práctico de la providencia aprobatoria de la información. Constituye tal providencia, a nuestro juicio, uno de ". . .los documentos en que consten los actos jurídicos que de algún modo modifiquen el estado civil o la condición de la persona inscrita,. . . .", los cuales, según la sección 21 de la Ley del Registro Demográfico de Puerto Rico (Leyes de 1931, pág. 229), a petición de parte interesada, ". . .serán archivados en el Departamento de Sanidad en un archivo especial, haciendo referencia al certificado de nacimiento a que correspondan."([9]) Si bien el hecho de que a una persona se le conozca por un nombre distinto a aquél con que consta inscrita en el registro demográfico no modi-

---

([8])Aunque la Regla 81(*b*) de las de Enjuiciamiento Civil no es aplicable a una información *ad perpetuam,* el principio que expresa, de que un error en la súplica del remedio no es óbice para que se conceda el remedio apropiado, es de estricta aplicación.

([9])Las informaciones *ad perpetuam* siempre se han utilizado para acreditar *hechos* en los registros públicos, siempre que de esos hechos no resulte perjuicio a tercero. Véanse las Resoluciones de la Dirección General de los Registros de España de 30 de diciembre de 1914 (Anuario de 1914, pág. 234) y 12 de enero de 1917 (Anuario de 1917, pág. 131).

fica el "estado civil" de la persona, creemos que puede decirse que afecta o modifica "la condición de la persona", dentro del significado de la sección 21 de la Ley de Registro Demográfico. Normalmente, el concepto de la condición de una persona es sinónimo con el concepto de su estado civil.([10]) Pero la Legislatura en la sección 21 habla del "estado civil o la condición de la persona", lo que indica que al usar la palabra "condición" se refiere a algo que no es precisamente el "estado civil", razón por la cual estimamos justificada una interpretación liberal del concepto "condición", que abarque el nombre de la persona como una de las circunstancias que pueden afectar o modificar esa condición, particularmente si tenemos en cuenta que ese nombre es uno de los datos de mayor importancia que constan en el registro demográfico.

*Por los fundamentos expuestos debe revocarse la resolución apelada y en su lugar dictarse otra aprobando la información ad perpetuam y consignando que del testimonio prestado por la peticionaria Romana Pérez en dicha información, y de los certificados de nacimiento y de matrimonio que obran en autos, resulta que a Romana Pérez siempre se le ha conocido por Romana Torres.*

---

([10])Véase 2 Escriche, Diccionario de Legislación y Jurisprudencia 471, que define la condición de una persona así: "La calidad del nacimiento o estado de los hombres, como de noble, plebeyo, libre, siervo, etc., en virtud de la cual tienen estos diferentes derechos y obligaciones. En este sentido se entiende la palabra *condición* en el axioma de jurisprudencia de que cada uno se supone conocer la condición de la persona con quien contrata, esto es, si es menor o mayor, natural o extranjero, mujer casada, soltera o viuda."