EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael L. Roig Pou y otros<br><br>Ex parte<br><br>Peticionarios<br><br>v.<br><br>Registro Demográfico de Puerto Rico<br><br>Recurrida | Certiorari<br><br>2018 TSPR 184<br><br>201 DPR ____ |

Número del Caso: CC-2018-637


Fecha: 15 de noviembre de 2018


Tribunal de Apelaciones:

     Región Judicial de Bayamón y Carolina


 Abogados de la parte peticionaria:

     Lcdo. Oscar Nieves Díaz
     Lcdo. Diego J. Loinaz Martin


Materia: Resolución del Tribunal, Resolución *nunc pro tunc* y Voto particular disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael L. Roig Pou y otros

    Ex parte

  Peticionarios

    v.

Registro Demográfico de
Puerto Rico                     CC-2018-0637
    Certiorari

  Agencia Recurrida

RESOLUCIÓN

San Juan, Puerto Rico, a 14 de noviembre de 2018.

A la petición de certiorari, no ha lugar. A la *Solicitud de Relevo de Representación Legal y Asumiendo Representación Legal* presentada por la parte peticionaria, ha lugar.

Notifíquese **inmediatamente**.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente al cual se unieron la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael L. Roig Pou y otros

    Ex parte

  Peticionarios

     v.

Registro Demográfico de
Puerto Rico                  CC-2018-0637
    Certiorari

  Agencia Recurrida

RESOLUCIÓN
(Nunc Pro Tunc)

San Juan, Puerto Rico, a 15 de noviembre de 2018.

    Se enmienda *nunc pro tunc* nuestra Resolución de 14 de noviembre de 2018 a los únicos fines de hacer constar que el Juez Asociado señor Rivera García se unió al Voto particular disidente emitido por el Juez Asociado señor Estrella Martínez.

    Notifíquese **inmediatamente**.

    Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael L. Roig Pou y otros<br><br>Ex parte<br><br>Peticionarios<br><br>v.<br><br>Registro Demográfico de<br>Puerto Rico<br><br>Agencia Recurrida | CC-2018-0637 | *Certiorari* |

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ y los Jueces Asociados señores RIVERA GARCÍA y COLÓN PÉREZ.

San Juan, Puerto Rico, a 14 de noviembre de 2018.

¿Qué necesidad tiene el Estado de inmiscuirse en el seno familiar para impedir que unos padres solidifiquen el vínculo con sus hijos mediante un guion que una sus apellidos paterno y materno? A mi juicio, no existe un interés apremiante que lo justifique. Por ello, disiento.

En vista de lo anterior, procedo a exponer el contexto fáctico en el cual se desarrolló el caso ante nuestra consideración.

I

El Sr. Rafael Luis Roig Pou y la Sra. Ana Servanda Moyka Fleytas (peticionarios o esposos Roig-Moyka) son los padres de un par de gemelos que nacieron en San Juan, Puerto Rico, el 25 de febrero de 2003. Conforme surge de los certificados de nacimiento expedidos por el Registro Demográfico de Puerto Rico, los menores aparecen inscritos con los nombres de Carlos Daniel Roig Moyka y Rafael Andrés Roig Moyka.

El 2 de junio de 2017, los esposos Roig-Moyka presentaron una Petición sobre ad perpetuam rei memoriam ante el Tribunal de Primera Instancia, Sala de Bayamón. En la misma, consignaron su deseo de unir por medio de un guion los dos apellidos de sus hijos, de modo que leyeran "Roig-Moyka". Amparados en el procedimiento para el cambio, adición o modificación de nombre o apellidos estatuido en el Art. 31 de la Ley del Registro Demográfico de Puerto Rico (Ley del Registro Demográfico), 24 LPRA sec. 1231, los peticionarios solicitaron que se ordenara a la Directora del Registro Demográfico a enmendar los correspondientes certificados de nacimiento conforme al cambio solicitado.[1]

Así las cosas, el 28 de junio de 2017, el Registro Demográfico compareció mediante una Moción Informativa y se

_____

[1]Junto a la Petición, los esposos Roig-Moyka también acompañaron copia de su certificado de matrimonio y de sus respectivos nacimientos. Además, cada uno de los cónyuges anejó los siguientes documentos: (1) Certificación negativa de antecedentes penales; (2) Certificación negativa de caso de pensión alimentaria; (3) Certificación negativa de deuda con el Departamento de Hacienda; (4) Certificación negativa de deuda con el Centro de Recaudaciones de Ingresos; (5) Certificación negativa de quiebra y (6) copia de licencia de conducir.

opuso a la solicitud de los peticionarios. En primer orden, adujo que la Ley del Registro Demográfico no reconoce ni menciona el uso de símbolos o caracteres en la creación de nombres o apellidos. Segundo, arguyó que el uso del mecanismo dispuesto en el Art. 31 de la Ley del Registro Demográfico, supra, se limitaba a la corrección de errores u omisiones en los certificados de nacimiento. Por último, cuestionó las implicaciones que a su juicio acarreaba acceder a lo pedido, haciendo constar que:

> [L]o solicitado es usar la unión de dos apellidos mediante símbolos o caracteres para crear uno nuevo para el cual no se justifica procedencia alguna [.] Aquí no hay un tracto registral del cual surja este nuevo apellido. La creación de este nuevo apellido rompe con todo tracto exacto y perfecto que deben tener los asientos registrales. Estamos ante la disyuntiva de saber si este nuevo apellido se colocaría en el encasillado paterno o materno [.] Una vez roto ese tracto [,] el mismo certificado de nacimiento se contradeciría de su propia faz, esto porque los menores constarían con un apellido totalmente diferente al de sus padres.[2]

El 18 de julio de 2017, los peticionarios replicaron. A tal fin, trajeron al plano de la discusión lo resuelto mediante Sentencia en Andino Torres, Ex-parte, 151 DPR 794 (2000). Ello, con el propósito de invitar al foro primario a tener presente que el procedimiento en cuestión, aparte de cambios correctivos, también provee para cambios enmendatorios, siempre y cuando la alteración solicitada no presuponga un cambio real y sustancial en las constancias registrales. De ese modo, los peticionarios arguyeron que la unión del apellido paterno y materno por un guion no

---

[2] Moción informativa, apéndice del certiorari, pág. 70.

constituía un cambio sustancial, pues de ninguna manera suprimía la información que ya constaba en el Registro Demográfico.

El 19 de diciembre de 2017, el foro primario notificó una Resolución denegando la solicitud de los peticionarios. Amparado en el texto del Art. 31 de la Ley del Registro Demográfico, supra, y lo resuelto en Delgado, ex parte, 165 DPR 170 (2005), el Tribunal de Primera Instancia razonó que el cambio, adición o modificación de un nombre o apellido debía responder a circunstancias excepcionales y que los peticionarios no habían demostrado tener una justificación válida para lo solicitado. Además, resolvió que el cambio solicitado equivalía a la creación de un nuevo apellido, por lo que se trataba de un cambio sustancial que no estaba permitido.[3]

Oportunamente, los peticionarios solicitaron la reconsideración del dictamen. Entre sus planteamientos, argumentaron que si bien en Delgado, ex parte, supra, este Tribunal no había autorizado el cambio de sexo en un certificado de nacimiento, **sí permitió el cambio de nombre. Además, arguyeron que la denegatoria del cambio de apellido solicitado incidía sobre su derecho constitucional a la vida privada y familiar.**[4] La reconsideración fue denegada.

En desacuerdo, los peticionarios presentaron un recurso de certiorari ante el Tribunal de Apelaciones. Argumentaron

---

[3]Resolución, apéndice del certiorari, pág. 86.

[4]Solicitud de reconsideración, apéndice del certiorari, pág. 90.

que lo resuelto por el foro de instancia, respecto a la existencia de una circunstancia extraordinaria como requisito para autorizar el cambio solicitado, no encontraba apoyo estatutario, ni jurisprudencial. Igualmente, plantearon que lo decidido violentaba su derecho a la propia identidad, a la libertad de expresión y a la vida plena.

Luego de varios incidentes procesales, el 13 de junio de 2018, el foro intermedio denegó expedir el auto solicitado. Oportunamente, los peticionarios presentaron una Solicitud de Reconsideración. En la misma, trajeron a la consideración de ese foro lo resuelto en abril de 2018 por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico en Arroyo-González v. Roselló-Nevares, 305 F. Supp. 3d 327 (D. PR 2018), y las conclusiones de derecho allí dictaminadas respecto a la primacía del derecho constitucional a la intimidad sobre las interpretaciones estatutarias elaboradas en Delgado, ex parte, supra.[5] El Tribunal de Apelaciones no reconsideró.

---

[5]En Arroyo-González v. Roselló-Nevares, 305 F. Supp. 3d 327 (D. PR 2018), el Tribunal de los Estados Unidos para el Distrito de Puerto Rico atendió una controversia relacionada a la validez constitucional de la prohibición de cambio de sexo en el certificado de nacimiento de varios peticionarios transgénero. Dicho foro invalidó tal prohibición, disponiendo en parte que:

The Supreme Court recognizes that 'a constitutional right to privacy is now well established'. The majority opinion in Ex parte Delgado Hernández, 165 DPR 170 (2005), which defendants relied on in their opposition, is limited to the statutory interpretation of the Demographic Registry Law of Puerto Rico . . . and does not supersede this

Inconformes, los peticionarios presentaron una petición de _certiorari_ ante este Tribunal. Entre otros asuntos, sostienen que la determinación del Tribunal de Primera Instancia violentó sus derechos constitucionales reconocidos en el Art. II, Sec. 8, de nuestra Carta de Derechos, _infra_.

**II**

**A.**

A nivel federal, el derecho fundamental de los padres y madres de tomar decisiones respecto a sus hijos e hijas está firmemente establecido. Véanse, <u>Washington v. Glucksberg</u>, 521 US 702, 720 (1997) ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the right [] to . . . direct the . . . upbringing of one's children"); <u>Cleveland Bd. of Educ. v. LaFleur</u>, 414 US 632, 639-640 (1974)("This Court has long recognized that freedom of personal choice in matters of marriage and family life

_____

fundamental constitutional right. Íd., pág. 332. (Citas omitidas).

A fines de implementar lo resuelto por dicho foro, el 13 de julio de 2018, el Registro Demográfico publicó la Carta Circular Núm. 3-18 (RD) intitulada <u>Para crear las instrucciones para el cambio de género de transgéneros y para otros fines</u>, en la que se establece el procedimiento a seguir. Además, preparó el correspondiente documento de solicitud de cambio. Véase, Departamento de Salud de Puerto Rico, <u>Solicitud para cambio de género en certificaciones de eventos vitales</u>, http://salud.gov.pr/Servicios-al-Ciudadano/Pages/Registro-Demografico.aspx (última visita, 13 de noviembre de 2018).

is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment").[6]

Por años, se ha debatido si el derecho constitucional a la crianza y la toma de decisiones en el ámbito familiar protege la prerrogativa de los padres y madres de escoger o cambiar los nombres y apellidos de sus hijos e hijas. Véanse, C. F. W. Larson, Naming Baby: The Constitutional Dimensions of Parental Naming Rights, 80 Geo. Wash. L. Rev. 159 (2011); J. S. Kushner, The Right to Control One's Name, 57 UCLA L. Rev. 313 (2009); B. S. Seng, Like Father, Like Child: The Right of Parents in their Children's Surname, 70 Va. L. Rev. 1303 (1984).

Algunos tribunales federales, amparados en el ratio decidendi de la jurisprudencia del Tribunal Supremo de los Estados Unidos en materia de derecho a la intimidad, han reconocido el derecho constitucional de los padres a escoger el apellido de sus hijos. Así, por ejemplo, en Jech v. Burch, 466 F. Supp. 714 (D. Haw. 1979), el Tribunal de Distrito de los Estados Unidos para el Distrito de Hawaii invalidó la actuación de la Oficina de Investigación y Estadísticas del Departamento de Salud de Hawaii, quien, a tenor con la legislación entonces vigente, denegó inscribir

---

[6]Véanse además, Santosky v. Kramer, 455 US 745, 753 (1982)("The absence of dispute reflected this Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"); Quilloin v. Walcott, 434 US 246, 255 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected").

el apellido fusionado que unos padres interesaban dar a su hijo.

Los padres, la señora Alena Jech y el señor Aldolf Befurt, querían que su hijo, Adrian, llevara el apellido fusionado de ambos, de modo que leyera "Jebef". El Estado negó la inscripción, amparado en que el apellido de Adrian debía ser del tipo autorizado por ley, en ese caso, "Befurt", "Jech", o las combinaciones "Befurt-Jech" o "Jech-Befurt". Al invalidar la actuación del Estado, el tribunal concluyó que: "[a] proper interpretation of Anglo-American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish, and that the Fourteenth Amendment protects this right from arbitrary state action". Íd., pág. 719.[7]

Igualmente, en Sydney v. Pingree, 564 F. Supp. 412 (S.D. Fla. 1983), el Tribunal de Distrito de los Estados Unidos para el Distrito Sur de la Florida resolvió que el concepto de libertad en la toma de decisiones en asuntos matrimoniales y reproductivos es lo suficientemente amplio como para reconocer el derecho de los padres a escoger el nombre de sus hijos. Íd., pág. 413.[8]

---

[7]El tribunal basó su razonamiento a partir de lo resuelto en Smith v. Organization of Foster Families, 431 US 816 (1977); Cleveland Bd. of Educ. v. La Fleur, 414 US 632 (1974); Roe v. Wade, 410 US 113 (1973); Griswold v. Connecticut, 381 US 479 (1965) y Meyer v. Nebraska, 262 US 390 (1923).

[8]Para una discusión más extensa sobre la jurisprudencia relacionada al tema, véanse, C. F. W.

Por otro lado, la Carta de Derechos de la Constitución de Puerto Rico establece la inviolabilidad de la dignidad del ser humano como principio de interpretación cardinal para todos los derechos reconocidos en ella. Art. II, Sec. 1, Const. ELA, LPRA, Tomo I; Rexach v. Ramírez, 162 DPR 130, 143 (2004). De ese modo, nuestra Carta de Derechos consagra el derecho fundamental a la intimidad y la protección contra ataques abusivos a la honra, la reputación y la vida privada o familiar. Art. II, Sec. 8, Const. ELA, supra.

Al interpretar este conjunto de normas constitucionales, hemos resuelto que el Estado tiene una doble función en proteger los mismos: "abstenerse de actuar de manera tal que se viole el ámbito de autonomía e intimidad individual y actuar afirmativamente en beneficio del individuo". Lozada Tirado et al. v. Testigos Jehová, 177 DPR 893, 910 (2010), citando a Soc. de Gananciales v. Royal Bank de P.R., 145 DPR 178, 201 (1998). En cuanto al derecho a la intimidad, en reiteradas ocasiones hemos expresado que este derecho se lesiona, "entre otras instancias, cuando se limita la facultad de un individuo de tomar decisiones personales, familiares o íntimas". Siaca v. Bahía Beach Resort, 194 DPR 559, 585 (2016); Lozada Tirado et al. v. Testigos Jehová, supra; Soc. de Gananciales v. Royal Bank de P.R., supra; Pueblo v. Duarte

---

Larson, Naming Baby: The Constitutional Dimensions of Parental Naming Rights, 80 Geo. Wash. L. Rev. 159 (2011); L. A. Foggar, Parents' Selection of Children's Surnames, 51 Geo. Wash. L. Rev. 583 (1983).

<u>Mendoza</u>, 109 DPR 596 (1980); <u>Figueroa Ferrer v. ELA</u>, 107 DPR 250 (1978).

Asimismo, este Tribunal ha reconocido que los padres y madres tienen un derecho fundamental a criar, cuidar y custodiar a sus hijos, protegido tanto por la Constitución de Puerto Rico como por la Constitución de los Estados Unidos. <u>Rexach v. Ramírez</u>, supra, pág. 148. Al delinear los contornos de este derecho, hemos indicado que la zona de intimidad que cubre las relaciones familiares responde a que las mismas desempeñan un rol cultural determinante en la transmisión de tradiciones y creencias entre las generaciones. Íd., pág. 146, citando a <u>Roberts v. U.S. Jaycees</u>, 468 US 609, 618-620 (1984). Por ello, hemos enfatizado que "el Estado debe abstenerse de intervenir en la esfera familiar ya que es ahí donde los individuos desarrollan su identidad, la cual es un elemento esencial del concepto libertad". Íd., págs. 146-147.

**B.**

La Ley del Registro Demográfico de Puerto Rico, 24 LPRA sec. 1041 <u>et seq.</u>, creó un Registro General Demográfico en el Departamento de Salud de Puerto Rico con el propósito de registrar, coleccionar, custodiar, preservar, enmendar y certificar hechos vitales de las personas que nacen en Puerto Rico. 24 LPRA sec. 1042(1). De ese modo, se reconoce que su finalidad es servir de instrumento de constatación para quienes entran en contacto con las personas registradas. <u>Delgado, ex parte</u>, supra, pág. 187. Entre los

récords vitales contemplados por dicha ley se encuentran los certificados de nacimiento. 24 LPRA sec. 1042(10).

Previo a la vigencia de nuestra Constitución local, en Ex Parte Pérez, 65 DPR 938 (1946), este Tribunal se pronunció por primera vez en torno a la posibilidad de cambiar un apellido en el certificado de nacimiento. La peticionaria en el caso, cuyo apellido inscrito era "Pérez", interesaba cambiar el mismo por "Torres", que era por el cual se le conocía. Al interpretar restrictivamente las disposiciones originales del Art. 31 de la Ley del Registro Demográfico, supra, este Tribunal resolvió que, en ausencia de autorización legislativa expresa, el cambio peticionado no estaba permitido. Íd., pág. 943.

De ese modo, a través de la Ley Núm. 119 de 26 de abril de 1950, nuestra Asamblea Legislativa incorporó a la Ley del Registro Demográfico un procedimiento para el **cambio, adición o modificación** de un nombre o apellido. El mismo dispone que:

> [E]l cambio, adición o modificación de nombre o apellido sólo podrá hacerse a instancia del interesado, quien deberá presentar ante cualquier Sala del Tribunal de Distrito la oportuna solicitud, expresando bajo juramento los motivos de su pretensión, acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación.
>
> Transcurridos diez (10) días desde la remisión y notificación al Ministerio Fiscal, sin que éste haya formulado objeción alguna, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista o discrecionalmente podrá celebrar vista de estimarlo procedente y dictará el auto que

proceda. El auto en que se autorice el cambio, adición o modificación de nombre o apellido se inscribirá en el antiguo Registro Civil mediante anotación extendida al margen de la inscripción de nacimiento del interesado y al margen de la partida de su matrimonio. El cambio, adición o modificación de nombre o apellido se verificará en el Registro General Demográfico tachando en el certificado de nacimiento y en la certificación de la celebración del matrimonio del interesado el nombre o apellido sustituido y consignando el nuevo nombre o apellido autorizado por el tribunal. Las tachaduras se harán de modo que siempre pueda leerse el nombre o apellido suprimido. 24 LPRA sec. 1231.

Este Foro nunca ha resuelto que **el procedimiento de cambio, modificación o adición de nombre o apellido** esté condicionado a la concurrencia de circunstancias excepcionales. Tampoco ha resuelto que debe utilizarse **exclusivamente** para corregir los errores en el certificado de nacimiento. De hecho, en Delgado, ex parte, supra, este Tribunal revocó al Tribunal de Apelaciones en cuanto a la determinación de dejar sin efecto el cambio de nombre de "Alexis" a "Alexandra" en el certificado de nacimiento del señor Alexis Delgado Hernández. Ello, tras concluir que este había cumplido "**con todos los requisitos exigidos por la Ley del Registro para autorizar un cambio de nombre**". (Énfasis suplido). Íd., pág. 194. Igualmente, en Andino Torres, Ex-parte, supra, la determinación de los foros inferiores de autorizar el cambio de nombre solicitado, de "Andrés" a "Alexandra", ni siquiera estuvo en controversia.

Ambos casos presentan un denominador común. En los mismos, las peticiones de cambio de nombre no obedecieron a la existencia de un error material u objetivo en los

certificados de nacimientos de los solicitantes. Por el contrario, se fundamentaron en la voluntad y deseo de éstos en que sus certificados reflejaran el nombre por el cual querían ser llamados.

Además, un examen integral de nuestro ordenamiento jurídico tampoco permite concluir que el cambio de un nombre o apellido en el certificado de nacimiento requiera de circunstancias excepcionales o de la existencia de algún error en el mismo. Así, por ejemplo, mediante la Ley de asuntos no contenciosos ante notario, Ley Núm. 282-1999, 4 LPRA secs. 2155-2166, la Asamblea Legislativa autorizó la competencia concurrente de los notarios para conocer y tramitar, entre otros asuntos, los procedimientos de corrección de actas que obren en el Registro Demográfico y de los cambios de nombres y apellidos. 4 LPRA sec. 2155(5).

A esos efectos, la Regla 125 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, establece que toda persona interesada en cambiar su nombre o apellidos, según constan inscritos en el Registro Demográfico, podrá tramitar el cambio a través de un notario. Entre los cambios autorizados, se encuentran:(1) sustituir un nombre por otro; (2) añadir un nombre al que se tiene; (3) variar el nombre en grado tal que afecte la manera de pronunciarlo; **(4) eliminar o sustituir un apellido, y (5) corregir un alegado error en los apellidos inscritos cuando de los documentos que obran en el Registro Demográfico no surja prueba del error.** (Énfasis y subrayado nuestro). Íd.

Obsérvese que la Regla reconoce y distingue entre cambios para eliminar, sustituir o corregir apellidos.

## III

Al considerar la normativa jurídica aplicable, me parece inconcebible que el Tribunal de Primera Instancia denegara la solicitud de los peticionarios, sin más, bajo la tesis de que el cambio en cuestión implicaba "la creación de un nuevo apellido". Ello, ignorando por completo que la **eliminación, sustitución o modificación** de un apellido por razones no correctivas está, como cuestión de derecho, permitida. Por tanto, lejos de ese simple razonamiento, el foro primario debió sopesar los fundamentos aducidos por el Registro Demográfico para oponerse al cambio con los derechos constitucionales implicados en la solicitud de los peticionarios. Proteger de interferencia indebida con los derechos constitucionales es función judicial.

Con su solicitud, lo único que los peticionarios pretendían era que se autorizara a unir por medio de un guion el apellido paterno y materno de sus hijos. Así habían decidido oficializar su historia familiar. Esa era su voluntad. Se trataba, pues, de una decisión que radicaba indudablemente en la esencia propia de su derecho a criar a sus hijos y a escoger cómo llamarlos.

No empece a la multiplicidad de derechos constitucionales que revestían la decisión de los peticionarios, el Registro Demográfico se opuso porque

entendió que el cambio peticionado no estaba autorizado, ya que su ley no proveía para la creación de apellidos mediante el uso de símbolos o caracteres. Sin embargo, un examen más profundo del argumento revela que la preocupación verdadera no radicaba en la posibilidad de que un apellido lleve un guion, sino en la suposición de que autorizar la inscripción del "nuevo apellido" suprimiría el tracto familiar que el certificado de nacimiento pretende publicar. Es decir, en el corazón del argumento yace la teoría de que, de autorizarse el cambio, "[e]l mismo certificado de nacimiento se contradeciría de su faz porque los menores constarían con un apellido totalmente diferente al de sus padres".[9]

Sin embargo, resulta en extremo difícil concebir cómo el cambio solicitado varía o suprime la información que, en este contexto, el certificado de nacimiento pretende reflejar. De haber sido autorizado el cambio, el dato registral en cuestión hubiera permanecido igual: que los menores Carlos Andrés **"Roig-Moyka"** y Carlos Daniel **"Roig-Moyka"** son hijos de Rafael Luis **Roig** Pou y Ana Servanda **Moyka** Fleitas. Teorizar que con la inclusión del susodicho guion los menores "se quedarían sin padres" porque dejarían de tener el primer apellido de ambos, que es lo que actualmente reflejan sus certificados de nacimiento, ofende el sentido común.

---

[9]Moción Informativa, apéndice del certiorari, pág. 70.

Por último, me preocupa sobremanera el planteamiento del Registro Demográfico a los efectos de que, por ser "Roig-Moyka" un "solo apellido", ello los pondría en la disyuntiva de no saber si el mismo debía ser colocado en el encasillado para el apellido paterno o materno de los menores. El argumento obvia que el propósito del cambio peticionado era, precisamente, evitar tal diferenciación. Además, ignora que lo anterior es un uso y costumbre legalmente aceptado a nivel mundial. Inclusive, a nivel de los Estados Unidos, ha cobrado auge la práctica entre familias latinas de consolidar el apellido paterno y materno de sus hijos en aras de preservar este último. Véase, Y. M. Cherena Pacheco, Latino Surnames: Formal and Informal Forces in the United States Affecting the Retention and Use of the Maternal Surname, 18 T. Marshall L. Rev. 1 (1992).

Ante los derechos constitucionales fundamentales involucrados en la situación, la "disyuntiva" planteada por el Registro Demográfico no constituye argumento suficiente para negar el cambio. Este bien podía consignar la modificación en cuestión a través de un nuevo encasillado en sus constancias registrales y expedir los certificados de nacimientos conforme al cambio peticionado.

En fin, en nuestra sociedad, pocas decisiones son más personales que la prerrogativa de escoger cómo llamar a un hijo. Para los peticionarios, quienes únicamente interesaban unir por medio de un guion el apellido paterno

y materno de sus hijos, esa libertad quedó a medias. Desafortunadamente, una Sala del Tribunal de Primera Instancia resolvió, sin mayor análisis, que en el Registro Demográfico no había cabida para semejante petición. Por entender que la decisión impugnada se basó en una interpretación desajustada de la legislación pertinente y se abstrajo del marco estatutario y constitucional aplicable, disiento.

## IV

Por los fundamentos antes expuestos, hubiera expedido el recurso promovido y revocado a los foros inferiores.


                              Luis F. Estrella Martínez
                                   Juez Asociado