Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| *Ex Parte*:  JAIME NOEL SEPÚLVEDA CARRERO  Peticionario | KLCE202301368 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aguadilla  Caso Núm. AG2022CV01204  Sobre: *Ad Perpetuam Rei Memoriam* |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Adames Soto, la Jueza Mateu Meléndez y el Juez Marrero Guerrero

Adames Soto, Juez Ponente

### **SENTENCIA**

En San Juan, Puerto Rico, a 11 de abril de 2024.

a.

El asunto ante nosotros es secuela de una intervención previa de este Foro intermedio, en el caso identificado con el alfanumérico KLCE202201373, dirimido mediante *Sentencia* de 17 de marzo de 2023. Según expusimos en el referido dictamen, ante una solicitud del peticionario de epígrafe, Jaime Noel Sepúlveda Carrero, instada en el Tribunal de Primera Instancia, TPI, para perpetuar un hecho (*ad perpetuam rei memoriam*), dicho foro primario ordenó su desestimación, al razonar que no tenía jurisdicción para ordenar lo solicitado, que el Registro Demográfico del estado de Washington, Estados Unidos, realizara un cambio de nombre. Cuando revisamos tal desestimación en el KLCE202201373, aunque coincidimos con el foro recurrido en su apreciación de que no ostentaba jurisdicción para ordenar el cambio de nombre sugerido al Registro Demográfico del estado aludido,

determinamos que sí conservaba autoridad para dirimir la alegación referente a si al peticionario se le conocía como Jaime Noel **de** Sepúlveda. En consecuencia, expedimos el recurso de *certiorari* solicitado, revocamos la determinación recurrida, y ordenamos devolver el asunto al TPI para que celebrara una vista evidenciaria donde permitiera al peticionario presentar prueba sobre el hecho que deseaba preservar, esto es, que presuntamente es conocido como Jaime Noel **de** Sepúlveda.

De conformidad, una vez recibido el mandato correspondiente, el tribunal *a quo* ordenó la celebración de la vista ordenada. Así, el 22 de agosto de 2023, el TPI recibió la prueba documental y testifical presentada por el peticionario con la cual este trató de demostrar el hecho que interesaba preservar. En específico, el peticionario presentó, y fueron admitidos como *exhibits*, veintinueve (29) documentos, además del testimonio de cinco testigos (el del peticionario inclusive), a tales efectos. A su vez, el Ministerio Público, quien participó en la vista celebrada, contrainterrogó a los referidos testigos. Finalmente, la juez que presidió la vista también participó activamente al dirigir preguntas a los testigos, luego de lo cual quedó sometido el asunto para su adjudicación.

Es así como, el 18 de octubre de 2023, el TPI emitió la *Resolución* cuya revocación nos solicita el peticionario, declarando *No Ha Lugar* la solicitud *Ad Perpetuam Rei Momoriam.* En síntesis, el foro primario denegó la solicitud del peticionario indicando que, del total de la prueba documental admitida como evidencia, no surgía dato alguno que sirviera para sostener el hecho que el peticionario proponía establecer. De igual forma, luego de haber sopesado la prueba testifical, tampoco con esta se logró establecer que el peticionario fuese conocido como Jaime de Sepúlveda Carrero, aunque sí se demostró que sus antepasados utilizaron el apellido *de Sepúlveda*, apellido que cayó en desuso hace más de un siglo. El foro primario llamó la atención a que, a pesar de que tanto el peticionario como su esposa testificaron acerca de la existencia de

documentos que hacían referencia al referido apellido, (tales como una carta, otros recibidos de España y certificados de defunción), ninguno de estos fue presentado como evidencia.

En definitiva, evaluada la prueba documental y testifical, el TPI concluyó que el peticionario no logró establecer el hecho cuya memoria deseaba perpetuar.

Inconforme con tal dictamen, el peticionario acude nuevamente ante nosotros, mediante recurso de *certiorari*, señalando los siguientes errores:

**Primer Error:** Erró el Honorable Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud *Ad Perpetuam Rei Memoriam*, para perpetuar el hecho de que el peticionario también es conocido como Jaime Noel de Sepúlveda Carrero.

**Segundo Error:** Erró el Honorable Tribunal de Primera Instancia en la interpretación y requerimientos de la figura del *Ad Perpetuam Rei Memoriam*.

**Tercer Error:** Erró el Honorable Tribunal de Primera Instancia al evaluar la prueba presentada.

**Cuarto Error:** Erró el Honorable Tribunal de Primera Instancia al determinar que en la vista evidenciaria, el peticionario no estableció el hecho de que fuera conocido como Jaime Noel de Sepúlveda Carrero, cuando la prueba testifical estableció y demostró que se conocía al peticionario con dicho nombre.

**Quinto Error:** Erró el Honorable Tribunal de Primera Instancia al no incluir en sus determinaciones que la prueba testifical presentada expresó que al peticionario se le conocía como Jaime Noel de Sepúlveda Carrero.

Por haberse afirmado en el recurso presentado que el foro primario incidió al aquilatar la prueba testifical, el peticionario incluyó una transcripción de la prueba oral, para ponernos en posición de revisarlos. Además, esta misma parte presentó un *Alegato* con el propósito de sustentar sus argumentos sobre el establecimiento del hecho a perpetuar a través de la prueba testifical.

Tratándose de un proceso *ex parte*, podemos resolver el asunto sin necesidad de requerir ni esperar por la presentación de un escrito en oposición al recurso ante nuestra consideración.

b.

Reiterando sobre la exposición de derecho que hiciéramos en el KLCE202201373, la Regla 3.1 (b) de Procedimiento Civil dispone que el tribunal tendrá facultad para conocer de los procedimientos de jurisdicción voluntaria. 32 LPRA Ap. V, R. 3.1. Se consideran actos de jurisdicción voluntaria todos aquellos en que sea necesario, o se solicite la intervención del juez, sin estar empañada ni promoverse cuestión alguna entre partes conocidas y determinadas. J. Cuevas Segarra, *Tratado de Derecho Procesal,* 2da edición, Tomo I, 2011, pág. 257; *Rivera v. Corte,* 68 DPR 673, 675-676 (1948).

En tal contexto, mediante un expediente *Ad Perpetuam Rei Memoriam* una parte puede solicitar perpetuar la memoria de un hecho cuando existe el peligro de que la prueba del mismo pueda perderse por razón de la ausencia o muerte de los testigos que lo conocen o por otras razones. *Ex Parte Pérez,* 65 DPR 938, 940 (1946); M. Morales Lebrón, *Diccionario Jurídico según la Jurisprudencia del Tribunal Supremo*, Colegio de Abogados, San Juan, 1977, pág. 39. De esta manera, tal acción permite que, en lo sucesivo, ciertos hechos consten, no desaparezcan, se olviden o se desfiguren con el transcurso del tiempo. J. Cuevas Segarra, *supra*, en la pág. 259. La intervención judicial les da autenticidad y fe, que carecerían de otro modo. *Íd.*

Asimismo, nuestro Tribunal Supremo ha expresado que *no es pertinente considerar el uso que habrá de darse en el futuro al testimonio perpetuado, excepto a los únicos fines de determinar si ha de perjudicar a alguna otra persona. Ex parte Pérez,* 65 DPR 938, 944 (1946); M. Morales Lebrón, *Diccionario Jurídico según la jurisprudencia del Tribunal Supremo de Puerto Rico,* Colegio de Abogados, 1977, pág. 40.

Por otra parte, al examinar la Resolución recurrida es esencial reconocer que la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, dispone que, *[l]as determinaciones de hechos basadas en testimonio oral no se*

*dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.*

Así pues, es norma reiterada que los tribunales apelativos debemos brindarle gran deferencia al juzgador de los hechos, pues es éste quien se encuentra en mejor posición para evaluar la credibilidad de un testigo. Por tanto, en ausencia de error manifiesto, prejuicio, pasión o parcialidad, no intervendremos con sus conclusiones de hechos y apreciación de la prueba. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917 (2016); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012); *SLG Rivera Carrasquillo v. AAA*, supra; *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006).

Nuestro más alto Foro ha explicado que incurre en pasión, prejuicio o parcialidad, *[a]quel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna. Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

En este sentido, valga advertir que la fase apelativa está caracterizada por la norma de deferencia judicial que debemos mostrar cuando nos corresponde aquilatar la credibilidad que efectúa el tribunal *a quo* al sopesar la prueba testifical. Esta norma arranca de la premisa de que es el foro primario el que está en mejor posición para evaluar y adjudicar la credibilidad de los testigos, pues tuvo la oportunidad de escuchar y ver declarar los testigos. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009); *López v. Dr. Cañizares*, 163 DPR 119,136 (2004). Después de todo, el "foro apelativo cuenta solamente con récords mudos e inexpresivos", de ahí el respeto a la adjudicación de credibilidad realizada por el foro primario. *SLG Rivera Carrasquillo v. AAA,* supra. Véase, además,

*Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984).

Nuestro Tribunal Supremo expresó en *Rivera Menéndez v. Action Service*, supra, págs. 444-445, en lo pertinente, que:

> [l]a intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de esa prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia.

De gran relevancia resultan también las expresiones de ese mismo alto Foro en *Dávila Nieves v. Meléndez Marín*, supra, pág. 770, al afirmar que, *como tribunal apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. Esa es la función de los tribunales de instancia.*

Lo hasta aquí expuesto supone que un tribunal revisor podrá intervenir con la apreciación de la prueba cuando, de un examen detenido de la misma, quede convencido de que el juzgador *descartó injustificadamente elementos probatorios importantes o que fundamentó su criterio únicamente en testimonios de escaso valor, o inherentemente improbables o increíbles. C. Brewer P.R., Inc. v. Rodríguez*, 100 DPR 826, 830 (1972); *Pueblo v. Luciano Arroyo*, 83 DPR 573, 581 (1961).

c.

El examen de los señalamientos de error revela que se encuentran en íntima relación, por tanto, son susceptibles de discusión conjunta y así procederemos.

Según ya hemos señalado, en la vista evidenciaria celebrada el peticionario tuvo la oportunidad de presentar prueba para establecer el hecho que deseaba perpetuar, que presuntamente era conocido como Jaime Noel de Sepúlveda Carrero. También apuntamos que, para tal fin, dicha parte se valió de la presentación de prueba documental y testifical.

Por estar este Foro intermedio en idéntica posición al tribunal *a quo* para sopesar la prueba documental admitida en evidencia, *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011), iniciamos el examen de la *Resolución* recurrida a través de esta. Tal como lo hiciera el foro recurrido, nos resulta evidente que, salvo por una mención en un corte de periódico del apellido de Sepúlveda[1], (artículo escrito por el padre del peticionario), no hay entre tales folios dato alguno que sirva para confirmar el hecho que el peticionario quiso perpetuar[2]. Con precisión, la prueba documental solo hace alusión a Jaime Sepúlveda, Jaime N. Sepúlveda, Jaime Noel Sepúlveda y Jaime Noel Sepúlveda Carrero, sin inclusión del apellido *de Sepúlveda* en ninguna de estos.[3]

Sobre lo anterior, en el recurso de *certiorari* se arguye que el peticionario no utilizó en los documentos aludidos el apellido *de Sepúlveda,* pues se atuvo al hecho legal de cómo aparecen su nombre y apellidos en el certificado de nacimiento.[4] Tal argumento nos resulta comprensible, pero no cambia en nada la correcta determinación del TPI cuando concluyó que la prueba documental presentada no sirvió para establecer el hecho que se pretendía preservar. En definitiva, ningún lector de la prueba documental admitida aquí como evidencia podría llegar a la conclusión de que al peticionario se le conocía o conoce con el apellido *de Sepúlveda.*

Entonces, por cuanto la prueba documental presentada no cumplió con el propósito de sostener la alegación del peticionario, solo nos quedaría verificar si dicha parte logró establecer que también fuera conocido como Jaime N. de Sepúlveda, a través de la prueba testifical desfilada. Sin embargo, al asumir esta labor revisora se debe partir del entendido mínimo

---

[1] Apéndice XIV del recurso de *certiorari*, pág. 60, y Transcripción de la prueba oral, pág. 51.
[2] *Íd.*, págs. 61-90.
[3] La ausencia de prueba documental para sostener lo alegado fue expresamente traído a la atención del Tribunal en medio de la celebración de la vista evidenciaria. Ver pág. 71 de la Transcripción de la Prueba.
[4] Así lo explicó el peticionario en su testimonio. Transcripción de la prueba oral, págs. 61-62.

de que, muy distinto a cuando este foro intermedio sopesa la prueba documental que estuvo ante la consideración del TPI, estamos sujetos a claras limitaciones al revisar la asignación de credibilidad dada por el foro recurrido a la prueba oral, según lo subrayamos en la exposición de derecho. Sin ánimos de reiterar sobre la normativa que conduce nuestro ejercicio revisorio ante la prueba testifical, baste recordar que estamos impedidos de dejar sin efecto las determinaciones de hechos originadas en el TPI, **salvo que sean claramente erróneas**, **y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos**. Regla 42.2 de Procedimiento Civil, supra. Por tanto, en ausencia de *error manifiesto, prejuicio, pasión o parcialidad,* estamos impedidos de intervenir con las conclusiones de hechos y la apreciación de la prueba. *Sucn. Rosado v. Acevedo Marrero,* supra.

Luego de examinar cada página de la transcripción de la prueba oral sometida por el peticionario, no encontramos en la valoración de la prueba testifical realizada por el TPI signo alguno de la *pasión, prejuicio, parcialidad o el error manifiesto* que nos autorizaría a intervenir con las determinaciones de hechos enumeradas en la *Resolución* recurrida, y mucho menos que hubiese sido *claramente errónea.* Por tanto, estamos llamados a sostener el criterio de dicho foro al juzgar que la prueba testifical presentada también falló en establecer que el peticionario fuera conocido como Jaime N. de Sepúlveda. Leído el escrito de *certiorari,* junto al *Alegato,* más bien lo que en estos se propone es que sustituyamos el ejercicio de credibilidad que llevó a cabo el foro primario sobre los testimonios vertidos, por el nuestro, y esa no es la función revisora que nos corresponde asumir ante la prueba oral, en ausencia de los factores ya repetidos.

Sobre lo anterior, nótese que, a través del primer testigo presentado, señor J. I. Ortiz Sepúlveda, por una parte, este afirmó que, con referencia

al peticionario, en las reuniones de familia se utilizaba el apellido *de Sepúlveda*, pero, por otra parte, también testificó que su mamá, hermana del padre del peticionario, le dijo que **ya no usaban el apellido** *de Sepúlveda, y tal usó cesó para fines de 1800, quizás*[5]. Igual ocurrió con el testimonio del Miranda González que, aunque identificó al peticionario como Jaime Noel de Sepúlveda Carrero, sólo mencionó que en las actividades familiares se comentaba de la cepa, de los apellidos, y que se llamaban *de Sepúlveda*, lo que cabe interpretar que la discusión giraba más bien alrededor del origen del apellido antes que de su uso ordinario por tales familiares. Este testigo no afirmó que los familiares del peticionario se dirigieran a él con el apellido *de Sepúlveda.*[6] El señor Muñiz Zavala también reiteró sobre el interés del peticionario en los orígenes de los apellidos, demostrado desde grados intermedios, pero, a través del contrainterrogatorio se estableció que, a pesar del peticionario desear que en la escuela lo conocieran con el apellido *de Sepúlveda*, no lo conocían así.[7] El testimonio de la señora Rosaura Miranda González, esposa del peticionario, versó, una vez más, del gran interés de este en la historia de los apellidos, la importancia que pone en el apellido *de Sepúlveda* en particular, y afirmó que utilizaba tal apellido. El propio peticionario testificó que, si su padre y antepasados utilizaban *de Sepúlveda*, él entendía que lo debían volver a usar, asunto que hacía saber a sus amistades, además de que sus amigos conocerlo así y él sentirse social y culturalmente con ese apellido. Afirmó que en distintos lugares lo conocen con el apellido de Sepúlveda, (polígono de tiro, fiestas, club de ajedrez). No pasa inadvertida la línea de preguntas enarbolada por la Juez que presidió la vista evidenciaria mostrando que, a pesar de que el padre del peticionario presuntamente deseaba que a su hijo se le recordara con

---

[5] Transcripción de la prueba oral, págs. 28-34.
[6] *Íd.*, págs. 36-41.
[7] *Íd.*, pág. 46.

el apellido *de Sepúlveda*, al nacer no lo inscribió en el Registro Demográfico bajo dicho apellido. Además, tampoco es baladí que cuando la Juez interrogó al peticionario sobre cómo fueron inscritos sus hijos, este dijo que lo hizo bajo el apellido *de Sepúlveda*, pero no proveyó la evidencia documental de tan valiosa información[8].

En definitiva, carecemos de los elementos que nos habilitarían para interferir con la apreciación de la prueba oral hecha por el foro recurrido, de modo que nos corresponde mostrar deferencia a las conclusiones extraídas por el TPI de dicho ejercicio probatorio. En este caso, ello supone sostener la conclusión del TPI al afirmar que no se presentó prueba de que el peticionario use o haya usado como su apellido paterno *de Sepúlveda* y que éste sea un acto conocido que pueda perpetuarse mediante resolución a esos efectos.

De otra parte, juzgamos como secundaria la controversia alzada por el peticionario a través del sexto señalamiento de error, por cuanto la determinación recurrida no se basó en el desistimiento del proceso anterior que el peticionario inició para que se le reconociera el apellido de Sepúlveda, sino más en la evaluación de la prueba documental y testifical presentada, según discutida en los párrafos que preceden. A todas luces, la mención de este asunto en el penúltimo párrafo de la *Sentencia* recurrida obedeció más bien a la correcta advertencia del foro primario acerca de que le correspondía aquilatar la prueba que se había presentado en esta vista evidenciaria, y no la prueba presuntamente presentada por el padre del peticionario en otro proceso sobre el mismo tema.

Por último, a través del séptimo error señalado el peticionario le atribuye al TPI haber incidido al: (1) no permitirle un turno posterior para que declarara un testigo anunciado; (2) no permitir la presentación de los certificados de nacimientos de sus hijos.

---

[8] *Íd.*, págs. 55-81.

Aunque no se discute así en el recurso de *certiorari,* lo que el peticionario solicita es que verifiquemos la exclusión de la evidencia ofrecida y no admitida, (testimonio y certificados de nacimiento). Sin embargo, la Regla 105 de Evidencia, 32 LPRA Ap. VI, R. 105, dicta, en lo pertinente, que no se revocará sentencia o decisión alguna por la exclusión errónea de evidencia, a menos que: (1) la parte perjudicada por la exclusión hubiere satisfecho los requisitos de la oferta de prueba concebidos en la Regla 104 de Evidencia y; (2) el tribunal que considera el señalamiento estime que la evidencia excluida fue un factor decisivo o sustancial en la sentencia o decisión emitida.

Al efectuar tal ejercicio de derecho probatorio, nos resulta evidente que el peticionario no pasa ni siquiera el umbral del primer requisito exigido por la Regla 105 citada, para que sopesemos cierta evidencia excluida. En este sentido, para cumplir con el requerimiento de la Regla 105(a)(1) de Evidencia, *supra,* una vez el TPI no aceptó admitir la prueba ofrecida por el peticionario, este tenía que invocar el fundamento en derecho por el cual entendía que sí debía ser admitida, y entonces proceder a hacer un ofrecimiento de prueba. Ninguna de estas dos cosas sucedió en este caso, de modo que ni siquiera tenemos que ponderar el requisito que dimana de la Regla 105(a)(2).

En definitiva, los errores señalados no fueron cometidos, por tanto, procede confirmar el dictamen recurrido.

d.

Por los fundamentos expuestos, expedimos el auto de *certiorari* y se confirmamos el dictamen recurrido.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones