EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael L. Roig Pou y otros<br><br>Ex parte<br><br>Peticionarios<br><br>v.<br><br>Registro Demográfico de Puerto Rico<br><br>Agencia Recurrida | Certiorari<br><br>2019 TSPR 181<br><br>203 DPR ____ |

Número del Caso:  CC-2018-0637


Fecha: 20 septiembre de 2019


Tribunal de Apelaciones:

    Región Judicial de Bayamón – Carolina, Panel VII


Abogado de la parte peticionaria:

    Lcdo. Diego J. Loinaz Martín


Oficina del Procurador General:

    Lcdo. Isaías Sánchez Báez
    Procurador General

    Lcdo. Pedro A. Vázquez Montijo
    Subprocurador General

    Lcda. Miriam Álvarez Archilla
    Procuradora General Auxiliar



Materia: Sentencia con Opiniones de Conformidad



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael L. Roig Pou y otros<br><br>Ex parte<br><br>Peticionarios<br><br>v.<br><br>Registro Demográfico de Puerto Rico<br><br>Agencia Recurrida | CC-2018-0637 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 20 de septiembre de 2019.

Examinada la petición de *certiorari,* presentada en el caso de epígrafe, se expide el auto solicitado y se dicta Sentencia mediante la cual revocamos la Resolución del Tribunal de Apelaciones emitida el 13 de junio de 2018, notificada el 14 de junio de 2018.

En consecuencia, autorizamos la solicitud de modificación de apellidos presentada por el Sr. Rafael Luis Roig Pou y la Sra. Ana Servanda Moyka Fleytas. Ordenamos al Registro Demográfico de Puerto Rico a interponer un guion entre los apellidos paterno y materno de los menores Carlos Daniel Roig Moyka y Rafael Andrés Roig Moyka, de modo que lean "Carlos Daniel Roig-Moyka" y "Rafael Andrés Roig-Moyka", respectivamente. Además, autorizamos a que se expidan sus certificados de nacimiento conforme a la modificación anterior.

Notifíquese **inmediatamente**.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad. El Juez Asociado señor Martínez Torres emitió una Opinión de Conformidad a la cual se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió una Opinión de Conformidad a la cual se unieron la Jueza Presidenta Oronoz Rodríguez,la

Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez.


                              José Ignacio Campos Pérez
                               Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael L. Roig Pou y otros

     Ex parte

   Peticionarios

     v.                       CC-2018-0637

Registro Demográfico de Puerto Rico

   Agencia Recurrida

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad.

En San Juan, Puerto Rico, a 20 de septiembre de 2019.

Hoy rechazamos una interpretación del Art. 31 de la Ley del Registro Demográfico de Puerto Rico, *infra*, que imposibilitaba que unos padres unieran mediante un guion los apellidos paterno y materno de sus hijos. Estoy conforme con esta determinación. Sin embargo, me expreso por separado pues este Tribunal debió, además, atender el planteamiento constitucional que adujeron los peticionarios, a saber: que su derecho fundamental a la intimidad impedía que el Estado regulara el nombre y apellido que dieron a sus hijos pues no existía un interés gubernamental apremiante que lo autorizara. A continuación, detallo los hechos que dieron lugar a este caso.

I

En junio de 2017, los esposos Rafael Luis Roig Pou y Ana Servanda Moyka Fleyta (los esposos o peticionarios) presentaron una petición ante el Tribunal de Primera Instancia para solicitar que se les permitiera modificar los apellidos de sus hijos menores de edad de forma que el apellido paterno "Roig" y el apellido materno "Moyka" se unieran mediante un guion para formar un solo apellido: "Roig-Moyka". Lo anterior, al amparo del procedimiento que instituye el Art. 31 de la Ley del Registro Demográfico de Puerto Rico, Ley Núm. 24 de 22 de abril de 1931, 24 LPRA sec. 1231, para cambiar, adicionar o modificar un nombre o apellido. En lo pertinente, este dispone:

> El cambio, adición o modificación de nombre o apellido sólo podrá hacerse a instancia del interesado, quien deberá presentar ante cualquier Sala del Tribunal de Distrito la oportuna solicitud, expresando bajo juramento los motivos de su pretensión, acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación.
>
> Transcurridos diez (10) días desde la remisión y notificación al Ministerio Fiscal, sin que éste haya formulado objeción alguna, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista o discrecionalmente podrá celebrar vista de estimarlo procedente y dictará el auto que proceda. El auto en que se autorice el cambio, adición o modificación de nombre o apellido se inscribirá en el antiguo Registro Civil mediante anotación extendida al margen de la inscripción de nacimiento del interesado y al margen de la partida de su matrimonio. El cambio, adición o modificación de nombre o apellido se verificará en el Registro General Demográfico tachando en el certificado de nacimiento y en la certificación de la celebración del matrimonio del interesado el nombre o apellido

sustituido y consignando el nuevo nombre o apellido autorizado por el tribunal. Las tachaduras se harán de modo que siempre pueda leerse el nombre o apellido suprimido.[1]

Como se aprecia, esta disposición recoge los requisitos para solicitar un cambio de nombre o apellido en nuestra jurisdicción. Estos son: (1) que el cambio lo solicite la parte interesada; (2) que presente la solicitud en un Tribunal de Primera Instancia; (3) que en esa solicitud se expresen bajo juramento los motivos en los que se funda, y (4) que someta para el examen del tribunal aquella prueba documental que resulte pertinente y apoye su solicitud. Íd.

Aunque los esposos cumplieron cabalmente con estos requisitos,[2] el Registro se opuso. Primero, arguyó que la Ley del Registro Demográfico, supra, no autoriza cambios a nombres o apellidos salvo en circunstancias excepcionales.[3] A esos efectos, enumeró aquellas circunstancias que, en su opinión, permitirían el cambio. Entre estas, identificó la acción de impugnación de paternidad o maternidad, los procedimientos de adopción y las solicitudes dirigidas únicamente a corregir errores en las constancias del Registro.[4]

En segundo lugar, el Registro planteó que aceptar la modificación que solicitaron los padres implicaría crear un nuevo apellido, lo cual "rompe todo tracto exacto y perfecto

---

[1] Art. 31 de la Ley del Registro Demográfico de Puerto Rico, Ley Núm. 24 de 22 de abril de 1931, 24 LPRA sec. 1231, según enmendada.
[2] *Petición*, Apéndice, pág. 44; *Moción de Errata y Solicitud de Enmienda a Petición*, Apéndice, pág. 72.
[3] *Moción Informativa*, Apéndice, págs. 68-69.
[4] Íd., pág. 69.

que deben tener los asientos registrales", ya que en el certificado de nacimiento de los menores constaría un apellido "totalmente diferente al de sus padres".[5] El Registro añadió que, de autorizarse la modificación, no sabría si ubicar el "nuevo apellido" en el encasillado paterno o materno del formulario.[6] Incluso, el Registro alegó que la solicitud debería denegarse puesto que "la Ley del Registro Demográfico no reconoce o menciona el uso de símbolos o caracteres […] en la creación de nombres o apellidos" y que lo contrario redundaría en la inscripción de "nombres extravagantes", lo cual está expresamente prohibido por el Art. 19 de la Ley del Registro Demográfico, 24 LPRA sec. 1133.[7] Cabe destacar que –bajo la facultad que le concede el Art. 31, supra– el Ministerio Público compareció en apoyo del Registro.[8]

Así, el Tribunal de Primera Instancia acogió los argumentos que esbozó el Registro y denegó la *Petición*. Inconformes, los peticionarios acudieron al Tribunal de Apelaciones mediante una petición de *certiorari*, pero este se negó a expedir el recurso. Posteriormente, denegó una solicitud de reconsideración. Finalmente, los esposos recurrieron ante este Tribunal y, en reconsideración,

---

[5] *Moción Informativa*, Apéndice, pág. 70.
[6] Íd.
[7] *Réplica a Moción de Errata y Solicitud de Enmienda a Petición*, Apéndice, pág. 77. Posteriormente, en una comparecencia ante este Tribunal, el Registro indicó que su posición se fundamenta en el imperativo de "no acceder a peticiones frívolas ni caprichosas, sobre cambios en el Registro Demográfico". *Escrito Mostrando Causa*, pág. 7.
[8] *Moción Informativa*, *Apéndice*, pág. 132 ("El Ministerio Público coincide con lo expresado por la Asesora Legal del Registro Demográfico […]. Lo solicitado por la parte Peticionaria constituiría la creación de un nuevo apellido compuesto, del cual no hay un tracto registral".).

expedimos el recurso de *certiorari* que presentaron.

II

Con sabiduría, este Tribunal -de manera unánime, aunque por fundamentos distintos- siguió el único curso de acción que autoriza el Derecho: revocar la Resolución que emitió el Tribunal de Apelaciones y permitir que se modifique el apellido de dos menores según lo solicitaron sus padres.

No cabe duda de que el Registro y los foros recurridos añadieron requisitos para modificar un nombre o apellido que el Art. 31 de la Ley del Registro Demográfico, supra, no contempla. Debe quedar claro que una solicitud de cambio de nombre o apellido no está supeditada a que exista un error en el Registro o que esté presente alguna circunstancia "excepcional", como dictaminó el foro primario. Reitero, el estatuto no lo exige.[9]

Ahora bien, distinto al parecer de varios miembros de esta Curia, la negativa de los tribunales recurridos a autorizar el cambio de apellido no se circunscribió a una interpretación errada, y por demás restrictiva, del Art. 31 la Ley del Registro Demográfico, supra. Una lectura de la posición del Registro permite identificar argumentos que atañen a aspectos prácticos y operacionales sobre el funcionamiento del Registro Demográfico. En vista de que el

---

[9] "El Juez es un intérprete, y no un creador. Su facultad de interpretación adquiere relevancia cuando del estatuto surgen varios significados probables que suministran un margen adecuado para selección judicial, pero si el lenguaje es tan inequívoco que postula un solo significado, un sentido cabal de humildad y autodisciplina judicial requiere la aplicación de la voluntad legislativa". Clínica Juliá v. Sec. de Hacienda, 76 DPR 509, 521 (1954).

estatuto autoriza al Estado a levantar objeciones de tal naturaleza,[10] procedía que este Tribunal atendiera los planteamientos del Estado de manera cabal y definitiva.

Precisaba examinar, por ejemplo, interrogantes como: ¿Hasta qué punto el Estado puede regular, limitar o prohibir los nombres y apellidos que los padres dan a sus hijos? ¿Es suficiente con que el Estado aduzca consideraciones prácticas o de funcionamiento operacional para sostener una denegatoria de cambio de nombre o apellido? ¿Puede el Estado denegar una petición de cambio de nombre o apellido por entender que es "frívola" o "caprichosa", o por entender que resultaría en un "nombre extravagante"?

Nuestra Constitución, en su Artículo II, sección 8, nos ofrece dirección para atender tales interrogantes. Dispone que "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación **y a su vida privada o familiar**". Const. ELA, Art. II, sec. 8.[11] Resolvimos al respecto, que el derecho a la intimidad es uno fundamental que, en esta jurisdicción, aplica *ex proprio vigore*, por lo que no se requiere legislación para exigir su cumplimiento.

---

[10] "Transcurridos (10) días desde la remisión y notificación, **sin que [el Ministerio Público] haya formulado objeción alguna**, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista […]". Art. 31, supra.

[11] El Tribunal Supremo federal reconoce, además, que existe un derecho constitucional fundamental a la intimidad, aunque al amparo del debido proceso de ley sustantivo. Véase Planned Parenthood of Southeastern Pa. v. Casey, 505 US 833, 851 (1992) ("These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. **Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State.**") (Énfasis suplido).

P.R. Tel. Co. v. Martínez, 114 DPR 328 (1983). En apego a la disposición constitucional, este Tribunal, así como el Tribunal Supremo federal, reconocen que el derecho constitucional a la intimidad prohíbe que el Estado se inmiscuya en las decisiones que toman los padres sobre la crianza de sus hijos en ausencia de un interés gubernamental apremiante. Rexach v. Ramírez Vélez, 162 DPR 130 (2004); Troxel v. Granville, 530 U.S. 57 (2000); Pierce v. Society of Sisters, 268 U.S. 510 (1925); Meyer v. Nebraska, 262 U.S. 390 (1923). Al respecto, expresamos:

> En la sociedad democrática organizada alrededor de los derechos fundamentales del hombre, el Estado ha de reducir a un mínimo su intervención con sensitivas urdimbres emocionales como lo son las relaciones de familia. La intromisión en la vida privada sólo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado.[12]

Sin duda, seleccionar el nombre de sus hijos es una decisión trascendental para todo padre o madre,[13] y está ligada entrañablemente al proceso de crianza y formación de estos. Henne v. Wright, 904 F.2d 1208, 1217 (8th Cir. 1990) (C.J. Arnold, opinión concurrente en parte y disidente en parte) ("The right to name one's child seems to me, if anything, more personal and intimate, less likely to affect people outside the family, than the right to send the child

---

[12] García Santiago v. Acosta, 104 DPR 321, 324 (1975).
[13] Véase Carlton F.W. Larson, Naming Baby: The Constitutional Dimensions of Parental Naming Rights, 80 Geo. Wash. L. Rev. 159, 161-62 (2011) ("The importance of this legal regime can scarcely be overstated: the selection of a child's name, which he or she will likely bear for the rest of his or her life, is one of the most significant decisions parents will ever make.").

to a private school, *Pierce v. Society of Sisters,* 268 U.S.

510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), or to have the child

learn German, *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625,

67 L.Ed. 1042 (1923).").[14] Por tanto, el Registro se equivoca

cuando afirma que "[c]laramente el nombre y apellidos de una

persona es lo menos íntimo que puede tener".[15] La constancia

de un nombre y un apellido como un dato público no descarta

que su selección constituye una decisión sumamente privada e

íntima que se toma en el seno familiar.

La falta de disponibilidad de encasillados en cierto

formulario, la opinión sobre el buen o mal gusto de cierta

combinación de apellidos, o asuntos vinculados a la

conveniencia administrativa o *modus operandi* de los

funcionarios del Registro son argumentos que jamás

constituyen intereses apremiantes capaces de derrotar el

ejercicio de derechos fundamentales y las prerrogativas que

se derivan de ellos, como lo es la facultad de los padres a

escoger los nombres de sus hijos. Véase Carlton F.W. Larson,

Naming Baby: The Constitutional Dimensions of Parental Naming

Rights, 80 Geo. Wash. L. Rev. 159, 183 (2011) ("Justifications

based on administrative convenience and bookkeeping

requirements will be unavailing under strict scrutiny.").

---

[14] Incluso, no debe descartarse que otros derechos constitucionales fundamentales también estén implicados en la decisión de escoger el nombre y apellidos de los hijos. "The question could well be analyzed as a First Amendment issue. What I call myself or my child is an aspect of speech. When the State says I cannot call my child what I want to call her, my freedom of expression, both oral and written, is lessened". Henne v. Wright, 904 F.2d 1208, 1216 (8th Cir. 1990) (C.J. Arnold, opinión concurrente en parte y disidente en parte). Véase Larson, supra, pág. 181("Naming a child […] is a deeply expressive act").
[15] *Escrito Mostrando Causa*, pág. 14.

Este Tribunal, como cuestión de hecho, eximió al Estado (Registro) de su obligación de demostrar que su intromisión en el derecho fundamental de los padres promovía un interés gubernamental *apremiante*. Ello preocupa, pues la Mayoría sugiere que la procedencia de un cambio de nombre o apellido descansa **enteramente** en la discreción del Juez que viene llamado a sopesar los méritos de la solicitud. Tal interpretación se aparta de la Constitución del Estado Libre Asociado de Puerto Rico y de la Constitución federal, las cuales limitan significativamente el poder del Estado para regular la facultad de los padres de escoger los nombres de sus hijos.

En fin, sostengo que la deferencia que exige la regla de autolimitación judicial "termina cuando se evidencia que el Estado quebrantó la Constitución". AMPR v. Sist. Retiro Maestros IV, 190 DPR 854, 878 (2014). Lo contrario supondría una abdicación de nuestro deber elemental de salvaguardar los derechos civiles de los ciudadanos frente al Estado. Íd.[16] Hemos tomado otro camino, pero al hacerlo, permitimos que el Estado vulnere un derecho fundamental en nuestro ordenamiento: el derecho a la intimidad. Este Tribunal debió inclinar la balanza hacia un curso de acción que protegiera de frente, y sin ambages, este derecho. Perdimos una gran oportunidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[16] No podemos perder de vista que la regla de autolimitación judicial que se invoca para soslayar el análisis constitucional en este caso está basada en criterios de prudencia, por lo que da margen al uso de discreción por parte de los tribunales en circunstancias apropiadas.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael L. Roig Pou y otros

    Ex parte

  Peticionarios

     v.                    CC-2018-0637

Registro Demográfico de Puerto
Rico

    Agencia Recurrida

Opinión de Conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES a la cual se unieron la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 20 de septiembre de 2019.

Un análisis estatutario de la Ley del Registro Demográfico de Puerto Rico, Ley Núm. 24 de 22 de abril de 1931, 24 LPRA sec. 1041 et seq., demuestra que esta provee el proceso para el cambio de apellido solicitado por la parte peticionaria. Por eso, estoy conforme con revocar mediante sentencia la resolución del Tribunal de Apelaciones y ordenar el cambio de apellido en el Registro Demográfico.

I

El Sr. Rafael Luis Roig Pou y la Sra. Ana Servanda Moyka Fleytas presentaron una petición sobre ad perpetuam rei memoriam ante el Tribunal de

Primera Instancia, con el propósito de modificar los apellidos de sus hijos. Se ampararon en el procedimiento dispuesto por el Art. 31 de la Ley del Registro Demográfico, supra, 24 LPRA sec. 1231. Solicitaron que se unieran mediante un guion los apellidos paterno y materno de sus hijos.

El Registro Demográfico se opuso al cambio y el tribunal declaró no ha lugar la petición. Entendió que la petición sobre ad perpetuam rei memoriam no era la adecuada para el cambio solicitado y que las constancias del Registro solo podían ser enmendadas a manera de excepción. El foro apelativo denegó revisar.

Una simple lectura del Art. 31 revela que este permite tanto la corrección de errores en el certificado como el cambio de nombres y apellidos a instancia de la persona interesada. Para el cambio de nombres y apellidos, la ley no requiere que existan circunstancias extraordinarias ni justa causa.

Citaremos el artículo en toda su extensión para ilustrar nuestro planteamiento:

> El Secretario de Salud preparará, hará imprimir y facilitará a los encargados de registros todos los libros, impresos y formas que han de usarse para inscribir los nacimientos, casamientos y defunciones que ocurran o se celebren en el Estado Libre Asociado de Puerto Rico, o que fueren necesarios para llevar a cabo los propósitos de esta parte, y preparará y distribuirá aquellas instrucciones detalladas que no estén en conflicto con las disposiciones de esta parte y que pudieran ser necesarias para la aplicación uniforme de la misma para el mantenimiento de un perfecto sistema de registro; y para tales fines no podrán usarse otros libros, impresos y formas que aquellos que suministre el Secretario de Salud. Dicho Secretario hará que los certificados que se reciban

mensualmente en su Departamento procedentes de los encargados de registros sean examinados cuidadosamente y requerirá la información adicional que sea necesaria en aquellos que aparezcan incompletos o defectuosos, para lo cual toda persona que tenga conocimiento de hechos concernientes a cualquier nacimiento, casamiento o defunción, estará obligada a suministrar dicha información, cuando a ello sea requerida por el Secretario de Salud en persona o por medio de su representante acreditado, por correo, o por conducto del Registrador del distrito; Disponiéndose, que las omisiones o incorrecciones que aparezcan en cualquier certificado antes de ser registrado en el Departamento de Salud podrán ser salvadas insertando las correcciones o adiciones necesarias en tinta roja en dicho certificado, pero luego de haber sido archivado en el Departamento de Salud, no podrá hacerse en los mismos rectificación, adición ni enmienda alguna que altere sustancialmente el mismo, sino en virtud de orden del Tribunal de Distrito, cuya orden, en tal caso, será archivada en el Departamento de Salud haciendo referencia al certificado a que corresponda; Disponiéndose, sin embargo, que cuando el reconocimiento de un hijo natural se hiciere en documento público o en una declaración jurada bastará la presentación de dicho documento o declaración para que el encargado del Registro Demográfico proceda a inscribir el mismo, y a ese efecto, se llenará el correspondiente certificado de inscripción; Disponiéndose, además, que en caso de que el nacimiento de tal hijo hubiera sido previamente inscrito se llevará al certificado los datos adicionales que resulten de tal reconocimiento.

Para obtener dicha orden deberá presentar el interesado una solicitud a la Sala del Tribunal de Distrito de su domicilio, exponiendo bajo juramento su pretensión y formulándola debidamente acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación quien deberá formular su posición dentro del término de diez (10) días.

Transcurridos diez (10) días desde la remisión y notificación al Ministerio Fiscal sin que éste haya formulado objeción alguna, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista, o discrecionalmente podrá celebrar vista de estimarlo procedente y dictará el auto que proceda.

El auto en que se autorice la rectificación o enmienda de un asiento en el antiguo Registro Civil se inscribirá mediante anotación extendida en debida forma al margen de la inscripción rectificada. La rectificación, adición o enmienda de un certificado ya archivado en el Registro General Demográfico se hará insertando en él las correcciones, adiciones o enmiendas autorizadas por el tribunal. Las tachaduras que fueren necesarias se harán de modo que siempre se pueda leer la palabra tachada.

**El cambio, adición o modificación de nombre o apellido sólo podrá hacerse a instancia del interesado, quien deberá presentar ante cualquier Sala del Tribunal de Distrito la oportuna solicitud, expresando bajo juramento los motivos de su pretensión, acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación.**

**Transcurridos diez (10) días desde la remisión y notificación al Ministerio Fiscal, sin que éste haya formulado objeción alguna, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista o discrecionalmente podrá celebrar vista de estimarlo procedente y dictará el auto que proceda. El auto en que se autorice el cambio, adición o modificación de nombre o apellido se inscribirá en el antiguo Registro Civil mediante anotación extendida al margen de la inscripción de nacimiento del interesado y al margen de la partida de su matrimonio. El cambio, adición o modificación de nombre o apellido se verificará en el Registro General Demográfico tachando en el certificado de nacimiento y en la certificación de la celebración del matrimonio del interesado el nombre o apellido sustituido y consignando el nuevo nombre o apellido autorizado por el tribunal. Las tachaduras se harán de modo que siempre pueda leerse el nombre o apellido suprimido.** Art. 31, 24 LPRA sec. 1231 (énfasis nuestro).

Cuando se aprobó la Ley del Registro Demográfico en 1931, el Art. 31 era, en esencia, lo que es ahora el primer párrafo de dicho artículo, con excepción de la parte sobre el reconocimiento de un hijo natural, que se añadió mediante enmienda algunos años después. Ley Núm. 117 de 12 de mayo de

1943, 1943 Leyes de Puerto Rico 349-351. El Art. 31 explicaba las funciones del entonces Comisionado de Sanidad para mantener los registros de nacimientos, casamientos y defunciones. Además, establecía que los errores en certificados que no habían sido registrados se podían corregir, pero que luego de archivado en el Registro, cualquier rectificación, adición o enmienda que alterara sustancialmente el certificado, requería hacerse mediante orden de un tribunal.

No existía un estatuto que autorizara el cambio de nombres o apellidos. Este Tribunal se enfrentó a ese obstáculo en 1946 cuando una señora solicitó el cambio de su apellido mediante una información ad perpetuam rei memoriam. Ex Parte Pérez Hernández, 65 DPR 938 (1946). Dijimos entonces: "Ni en la Ley de Registro Civil de 1911, ni en la Ley del Registro Demográfico de 1931 que vino a sustituirle, ni en ninguna otra ley, se autoriza procedimiento alguno para cambiar nombres o apellidos, en el registro civil de ayer o en el registro demográfico de hoy". Íd., pág. 942.

En aquel caso, se aprobó la información ad perpetuam rei memoriam solicitada. La peticionaria solo quería perpetuar el hecho de que siempre le habían conocido por Romana Torres, y no por Romana Pérez. Ese hecho resultaba de la prueba, y no había evidencia de que el cambio perjudicara a alguna persona. Sin embargo, comentamos que a "la Legislatura incumbe actuar para corregir lo que entendemos es un defecto en nuestra legislación. Debe existir un

procedimiento sencillo para autorizar o reconocer el cambio de nombres y apellidos en casos adecuados, como existe en los estados de la Unión americana, y como existía en Puerto Rico bajo la soberanía española". Íd., pág. 943.

En 1950, la Asamblea Legislativa atendió esta preocupación y enmendó la ley para, entre otras cosas, "establecer el procedimiento para la rectificación, adición o enmienda de las inscripciones" y para "establecer el procedimiento para el cambio de nombre o apellido". Ley Núm. 119 de 26 de abril de 1950, 1950 Leyes de Puerto Rico 305. La enmienda al Art. 31 estableció un proceso para obtener la orden del tribunal necesaria para la rectificación, adición o enmienda de certificados ya registrados. Así, se aclaró la parte de la ley que había creado confusiones en el pasado.[17] También, la enmienda estableció un procedimiento para el cambio, adición o modificación de apellidos. Es decir, la

_____

[17] En las Actas de la Cámara de Representantes, vemos el siguiente comentario del representante Arcilio Alvarado al proyecto de ley que luego se convirtió en la enmienda de 1950:

> En Puerto Rico antes de que se resolviese por el Tribunal Supremo el caso de *Ex Parte Pérez* se tramitaban en las cortes de distrito unos expedientes de *In* (sic) *Perpetuam Memoriam* para corregir errores de nombre en las personas y hacer que se facilitara la expresión de la realidad en el Registro Demográfico. El caso del Supremo produjo cierta confusión y hace que sea difícil actualmente el trámite de los procedimientos. Esos procedimientos se llevan a cabo partiendo de disposiciones de la Ley de Enjuiciamiento Civil Española y, aplicando esa Ley en forma técnica, es que el Supremo ha resuelto que hay ciertas cosas que no se pueden tramitar como se venían tramitando. Es conveniente y necesario que haya un procedimiento oficialmente conocido, del cual se pueda depender para hacer estas correcciones. Este proyecto tiende a corregir esa situación estableciendo el procedimiento. Si se aprueba, entonces sabremos qué es lo que hay que hacer para corregir en el Registro Demográfico una dificultad o un error de nombre en la persona. Actas de la Cámara de Representantes, 17ma Asamblea Legislativa, Segunda Sesión Ordinaria, 1950, pág. 643.

enmienda de 1950 tuvo principalmente dos propósitos: (1) establecer un proceso para la corrección de errores y (2) establecer un proceso para cambio de nombre.

Más adelante, se enmendó nuevamente el Art. 31 para "acelerar el trámite judicial en la obtención de autos, providencias y decretos en casos ex parte de cambios y modificaciones en los asientos y actas en los registros demográficos". Exposición de motivos, Ley Núm. 204 de 23 de julio de 1974, 1974 (Parte 2) Leyes de Puerto Rico 110. La enmienda le concedió un término de diez días al Ministerio Fiscal para formular su posición respecto a los cambios solicitados. De no hacerlo, se dispuso que el tribunal procedería a resolver. El texto añadido por la enmienda se escribió dos veces en el Art. 31, una vez luego del párrafo que dispone el proceso para la corrección de errores y otra vez luego del párrafo que dispone el proceso para cambios de nombre y apellido. Ello abona a nuestra conclusión de que el Art. 31 no se limita a la corrección de errores.

En este caso, el Tribunal de Apelaciones erró al evaluar la solicitud del matrimonio Roig Pou y Moyka Fleytas como si se tratase de la corrección de un error. El Art. 31 (en la parte que hemos enfatizado en negritas) establece un procedimiento para solicitar el cambio de nombre y apellidos. Se trata de un proceso bastante sencillo. En síntesis, la parte interesada presenta su solicitud ante el Tribunal de Primera Instancia, junto con los motivos de su pretensión. Luego, el juez le concede un término al Ministerio Fiscal

para presentar sus objeciones, si alguna, y hecho eso, resuelve los méritos de la petición. Adviértase que los últimos dos párrafos del Art. 31, que es la parte que nos compete, no requieren circunstancias excepcionales ni justificación válida para realizar un cambio de nombre o apellido. Por lo tanto, las objeciones del gobierno no pueden ir dirigidas a que el tribunal prohíba lo que la ley permite ni a exigir lo que la ley no requiere. Por eso, el campo de discreción del tribunal para denegar la solicitud de cambio de nombre o apellido es limitado.

II

Lo discutido anteriormente es suficiente para resolver el caso mediante una sentencia sencilla, como hemos hecho. Sin embargo, una minoría de este Tribunal opina que era necesario evaluar el ángulo constitucional de la controversia. Los tribunales deben evitar cuestiones constitucionales si el caso puede ser resuelto por otros motivos. R. E. Bernier y J. A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Publicaciones JTS, 1987, págs. 328-329. "Es bien conocida la norma de que los tribunales no deben abordar planteamientos de índole constitucional cuando se puede disponer del caso en armonía con los intereses del apelante y en consonancia con los mejores fines de la justicia". Pueblo ex rel M.G.G., 99 DPR 925, 927 (1971).

En Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 DPR 521,

540-541 (1993), reiteramos esa norma de autolimitación

judicial, y dijimos que:

> En Ashwander v. Valley Authority, 297 U.S. 288, 345 (1936), el Juez Brandeis sentó las pautas adoptadas posteriormente por el propio Tribunal Supremo federal para decidir si debe considerar o no cuestiones constitucionales que le han sido planteadas. Señaló:
>
>> "... The Court will not pass upon a constitutional question although properly presented by record, if there is also present some other ground upon which the case may be disposed of. This rule has found most varied application. Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter. Ashwander v. Valley Authority, supra, pág. 347.
>
> Nosotros hemos adoptado ésta y las demás limitaciones señaladas en Ashwander v. Valley Authority, supra. Molina v. C.R.U.V., 114 D.P.R. 295, 324 (1983); Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 728 (1982); Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 783-784 (1968); E.L.A. v. Aguayo, 80 D.P.R. 552, 596-598 (1958). En estos casos hemos reiterado la norma de que los tribunales no deben pasar juicio sobre la constitucionalidad de las leyes cuando se puede resolver el caso con arreglo a otros criterios y fundamentos. Particularmente en Pacheco v. Srio. Instrucción Pública, 108 D.P.R. 592, 601 (1979), dijimos que los tribunales no entrarán a determinar la validez constitucional de una ley si en el caso existen otros planteamientos no constitucionales, a base de los cuales se podría dictar sentencia. En vista de esta clara y conocida doctrina establecida sobre abstención judicial, una vez el tribunal de instancia decidió varios planteamientos jurídicos ordinarios a favor de la Facultad, Inc., no había necesidad de dilucidar la cuestión constitucional que le fuera planteada y debió abstenerse de hacerlo.

Este es otro caso donde aplica esa norma saludable de autolimitación. El Art. 31, supra, atiende la controversia y provee el remedio que aquí se solicita.

III

Como último señalamiento, vale mencionar que la parte peticionaria identificó incorrectamente su petición como una ad perpetuam rei memoriam. La información ad perpetuam cabe para perpetuar cualquier hecho, con tal de que no resulte en perjuicio a una persona cierta y determinada. Ex Parte Pérez, supra, pág. 943. "Dentro de los estrechos límites de la información ad perpetuam no cabe una orden disponiendo el cambio de un nombre o apellido. Todo lo que cabe es una providencia que disponga se perpetúe el testimonio". Íd., pág. 941. Lo correcto, según el marco legal vigente, es solicitar un cambio de nombre al amparo del Art. 31 de la Ley del Registro Demográfico, supra. Sin embargo, el nombre no hace la cosa. "Cualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba". Regla 71 de Procedimiento Civil, 32 LPRA Ap. V.

La parte peticionaria hizo una petición válida al amparo del Art. 31 y así debió considerarse. Procede declararla con lugar y ordenar el cambio de apellido en el Registro Demográfico.

                                        RAFAEL L. MARTÍNEZ TORRES
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael L. Roig Pou y otros<br><br>Ex parte<br><br>Peticionarios<br><br>v.<br><br>Registro Demográfico de Puerto Rico<br><br>Agencia Recurrida | CC-2018-0637 | *Certiorari* |

Opinión de Conformidad emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ, a la cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ, la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ y el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 20 de septiembre de 2019.

En esta ocasión, corresponde a este Tribunal determinar si, conforme a nuestro ordenamiento jurídico, procedía que los foros recurridos denegaran la solicitud presentada por los padres de unos menores de edad, quienes únicamente interesan consolidar los apellidos de sus hijos mediante la inclusión de un guion entre sus apellidos paterno y materno. Toda vez que este Foro respondió en la negativa, estoy conforme con lo hoy dictaminado.

La importancia de este reclamo amerita exponer el cuadro fáctico y procesal en el que se suscitó la controversia ante nuestra consideración, así como el Derecho que gobierna la misma.

I

El 2 de junio de 2017, el Sr. Rafael Luis Roig Pou y la Sra. Ana Servanda Moyka Fleytas (peticionarios o esposos Roig-Moyka) presentaron una <u>Petición</u> sobre <u>ad perpetuam rei memoriam</u> ante el Tribunal de Primera Instancia, Sala de Bayamón. Allí informaron ser los padres de los menores Carlos Daniel Roig Moyka y Rafael Andrés Roig Moyka, un par de gemelos que nacieron en San Juan, Puerto Rico, el 25 de febrero de 2003. Amparados en el procedimiento para el cambio, adición o modificación de nombre o apellidos estatuido en el Artículo 31 de la Ley del Registro Demográfico de Puerto Rico, <u>infra</u>, los peticionarios manifestaron su deseo de consolidar los apellidos de sus hijos mediante un guion entre éstos, de modo que leyeran "Carlos Daniel Roig-Moyka" y "Rafael Andrés Roig-Moyka".[18]

Sin embargo, el 28 de junio de 2017, el Registro Demográfico de Puerto Rico (Registro Demográfico) se opuso a lo solicitado. Según adujo, el mecanismo establecido en el Artículo 31 de la Ley del Registro Demográfico, <u>infra</u>, está disponible exclusivamente para corregir los errores que puedan existir en un certificado de nacimiento. Sobre el particular, el Registro Demográfico argumentó que acceder a lo

---

[18]Aunque los esposos Roig-Moyka intitularon su petición como una de <u>ad perpetuam rei memoriam</u>, lo que realmente solicitaron fue la modificación de los apellidos de sus hijos al amparo del Art. 31 de la Ley del Registro Demográfico, 24 LPRA sec. 1231. No obstante, ese error de modo alguno incide en los méritos sustantivos de su pedido, pues, en nuestra jurisdicción, es norma trillada que el nombre no hace la cosa. <u>Borschow Hosp. v. Jta. de Planificación</u>, 177 DPR 545, 567 (2009); <u>Meléndez Ortiz v. Valdejully</u>, 120 DPR 1, 24 (1988); <u>Comisión Servicio Público v. Tribl. Superior</u>, 78 DPR 239 (1955).

solicitado por los peticionarios equivaldría a adscribirle un lenguaje liberal y expansivo a la Ley del Registro Demográfico, _infra_, que resultaría incompatible con lo resuelto por una Mayoría de este Tribunal en _Delgado, Ex parte_, 165 DPR 170 (2005).

Por último, el Registro Demográfico argumentó que el cambio peticionado daría al traste con las constancias registrales existentes, pues entendía que el mismo presupondría la creación de un nuevo apellido que resultaría distinto al de los esposos Roig-Moyka. Sobre el particular, el Registro Demográfico expresó que:

> [L]o solicitado es usar la unión de dos apellidos mediante símbolos o caracteres para crear uno nuevo para el cual no se justifica procedencia alguna [.] Aquí no hay un tracto registral del cual surja este nuevo apellido. La creación de este nuevo apellido rompe con todo tracto exacto y perfecto que deben tener los asientos registrales. Estamos ante la disyuntiva de saber si este nuevo apellido se colocaría en el encasillado paterno o materno [.] Una vez roto ese tracto [,] el mismo certificado de nacimiento se contradeciría de su propia faz, esto porque los menores constarían con un apellido totalmente diferente al de sus padres.[19]

En respuesta, los peticionarios argumentaron que el procedimiento dispuesto en el Artículo 31 de la Ley del Registro Demográfico, _infra_, se puede invocar para tramitar, aparte de cambios de naturaleza correctiva, otros tipos de modificaciones, siempre que la alteración solicitada no presuponga un cambio real y sustancial en las constancias registrales. A tono con ello, arguyeron que la unión del apellido paterno y materno de sus hijos por un guion no constituía un cambio sustancial, pues de ninguna manera

---

[19] _Moción informativa_, apéndice del _certiorari_, pág. 70.

suprimía la información que ya constaba en el Registro Demográfico.

Sin embargo, el 19 de diciembre de 2017, el Tribunal de Primera Instancia denegó la solicitud de los esposos Roig-Moyka. Aludiendo al texto del Artículo 31 de la Ley del Registro Demográfico, infra, y lo resuelto en Delgado, Ex parte, 165 DPR 170 (2005), el foro primario razonó que un cambio, adición o modificación de un nombre o apellido debía responder a la corrección de un error u otras circunstancias excepcionales, y que los peticionarios no habían demostrado tener una justificación válida para ello. Además, entendió que el cambio solicitado redundaría en la creación de un nuevo apellido, por lo que se trataba de un cambio sustancial que no estaba permitido por ley.

Oportunamente, los esposos Roig-Moyka solicitaron la reconsideración del dictamen. Entre sus planteamientos, argumentaron que si bien en Delgado, Ex parte, supra, este Tribunal no había autorizado el cambio de sexo en un certificado de nacimiento, sí permitió el cambio de nombre del peticionario en dicho caso. **Además, contrario a lo ocurrido en Delgado, Ex parte, supra, arguyeron que la denegatoria del cambio de apellido solicitado incidía sobre su derecho constitucional a la vida privada y familiar.**[20] Aun así, la reconsideración fue denegada.

---

[20]Solicitud de reconsideración, apéndice del certiorari, pág. 90.

Ante ese cuadro, los peticionarios presentaron un recurso de <u>certiorari</u> ante el Tribunal de Apelaciones. Allí argumentaron que el foro primario erró al condicionar la autorización del cambio solicitado a la existencia de una circunstancia extraordinaria. Ello así, pues adujeron que tal conclusión no encontraba apoyo estatutario, ni jurisprudencial. Luego de varios incidentes procesales, el 13 de junio de 2018, el foro intermedio denegó expedir el auto solicitado.

Posteriormente, los peticionarios solicitaron reconsideración y trajeron a la consideración del Tribunal de Apelaciones lo resuelto en abril de 2018 por la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico en <u>Arroyo González v. Rosselló Nevares</u>, 305 F. Supp. 3d 327 (D. PR 2018). Ello, a fin de invitar a dicho foro a tener presente que las conclusiones de derecho elaboradas en <u>Delgado, Ex parte</u>, supra, fueron el producto de un análisis estrictamente estatutario bajo la Ley del Registro Demográfico, <u>infra</u>, y no abordaron un ángulo constitucional.[21] El foro apelativo intermedio no reconsideró.

_____

[21]En <u>Arroyo-González v. Rosselló-Nevares</u>, 305 F. Supp. 3d 327 (D. PR 2018), la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico atendió una controversia relacionada a la constitucionalidad de la prohibición de cambio de sexo en el certificado de nacimiento de varios peticionarios. Ese foro invalidó tal prohibición, disponiendo en parte que:

The Supreme Court recognizes that 'a constitutional right to privacy is now well established'. The majority opinion in <u>Delgado, Ex parte</u>, 165 DPR 170

De ese modo, los peticionarios recurrieron ante este Tribunal. Entre sus señalamientos, plantearon que los foros inferiores erraron al razonar que la inclusión de un guion entre los apellidos de sus hijos debía responder a circunstancias extraordinarias. Además, argumentaron que estas decisiones se abstrajeron de considerar los derechos constitucionales invocados.

El 28 de enero de 2019, una Mayoría de este Tribunal expidió en reconsideración el auto solicitado. Perfeccionado el mismo y contando con la comparecencia de todas las partes, abordemos el derecho aplicable a la presente controversia.

**II**

**A.**

La Ley del Registro Demográfico de Puerto Rico, 24 LPRA sec. 1041 et seq., creó un Registro General Demográfico en el Departamento de Salud de Puerto Rico con el propósito de registrar, coleccionar, custodiar, preservar, enmendar y certificar hechos vitales de las personas que nacen en Puerto Rico. 24 LPRA sec. 1042(1). De ese modo, se reconoce que su finalidad es servir de instrumento de constatación para quienes entran en contacto con las personas registradas. Delgado, Ex parte, supra, pág. 187. Entre los expedientes

---

(2005), which defendants relied on in their opposition, is limited to the statutory interpretation of the Demographic Registry Law of Puerto Rico . . . and does not supersede this fundamental constitutional right. (Citas omitidas). Íd., pág. 332.

vitales contemplados por esa ley se encuentran los certificados de nacimiento. 24 LPRA sec. 1042(10).

Las controversias relacionadas al cambio de apellidos en el certificado de nacimiento, si bien escasas, han sido examinadas anteriormente por este Tribunal. En Ex Parte Pérez, 65 DPR 938 (1946), este Foro atendió el caso de la Sra. Romana Pérez, quien solicitó cambiar su apellido inscrito por "Torres". Ello así, pues a pesar de que su apellido paterno inscrito coincidía con el de su padre "legítimo", Luis Pérez, ésta quería cambiar su apellido a "Torres", que era por el cual la conocían. No obstante, tras examinar de modo restrictivo el **lenguaje original** de la Ley del Registro Demográfico, supra, este Tribunal concluyó que en Puerto Rico no existía un estatuto que autorizara el cambio de apellidos en nuestros registros. Íd., pág. 942. De ese modo, reconocimos que incumbía a la Asamblea Legislativa corregir lo que catalogamos como "un defecto en nuestra legislación", mediante la promulgación de "un procedimiento sencillo para autorizar o reconocer el cambio de nombres y apellidos". Íd., pág. 943.

Eventualmente, la Asamblea Legislativa aprobó la Ley Núm. 119 de 26 de abril de 1950, en la cual se modificó el lenguaje del Artículo 31 de la Ley del Registro Demográfico, 24 LPRA sec. 1231, a los fines de instituir un procedimiento para **cambiar, adicionar o modificar** un nombre o apellido, sujeto a lo siguiente:

> [E]l cambio, adición o modificación de nombre o apellido sólo podrá hacerse a instancia del interesado, quien deberá presentar ante cualquier

Sala del Tribunal de Distrito la oportuna solicitud, expresando bajo juramento los motivos de su pretensión, acompañada de la prueba documental pertinente en apoyo de su solicitud. Copia de la solicitud y de toda la prueba documental le será remitida al Ministerio Fiscal simultáneamente con su radicación.

Transcurridos diez (10) días desde la remisión y notificación al Ministerio Fiscal, sin que éste haya formulado objeción alguna, el tribunal entenderá y resolverá los méritos de la petición sin necesidad de celebrar vista o discrecionalmente podrá celebrar vista de estimarlo procedente y dictará el auto que proceda. El auto en que se autorice el cambio, adición o modificación de nombre o apellido se inscribirá en el antiguo Registro Civil mediante anotación extendida al margen de la inscripción de nacimiento del interesado y al margen de la partida de su matrimonio. El cambio, adición o modificación de nombre o apellido se verificará en el Registro General Demográfico tachando en el certificado de nacimiento y en la certificación de la celebración del matrimonio del interesado el nombre o apellido sustituido y consignando el nuevo nombre o apellido autorizado por el tribunal. Las tachaduras se harán de modo que siempre pueda leerse el nombre o apellido suprimido.

En lo que concierne a los aspectos de <u>suficiencia</u> de la solicitud para el cambio, adición o modificación de un nombre o apellido, surge del texto anterior que la parte interesada debe "[e]xpresa[r] bajo juramento los motivos de su pretensión" y "acompaña[r] la prueba documental pertinente en apoyo de su solicitud". Íd. En ninguna parte del texto se sujeta el procedimiento en cuestión a que exista -ni mucho menos se demuestre- una circunstancia excepcional. Más importante aún, el estatuto tampoco limita el uso de este procedimiento exclusivamente a la corrección de errores en el nombre o apellido. Nuestros pronunciamientos tampoco han resuelto lo contrario.

En <u>Delgado, Ex parte</u>, supra, una Mayoría de este Tribunal, reconociendo la existencia del procedimiento para el cambio de nombre autorizado por la Ley del Registro Demográfico, <u>supra</u>, revocó la determinación del Tribunal de Apelaciones de dejar sin efecto el cambio de nombre –de "Alexis" a "Alexandra"- en el certificado de nacimiento de la parte peticionaria. Lo anterior, toda vez que este Foro concluyó que la parte había cumplido **"con todos los requisitos exigidos por la Ley del Registro para autorizar un cambio de nombre"**. (Énfasis suplido). Íd., pág. 194. Asimismo, es de notar que en aquel caso la solicitud de cambio de nombre no se fundamentó en la necesidad de corregir un error material u objetivo en el certificado de nacimiento de la parte peticionaria. Más bien, la solicitud obedeció al deseo de que su certificado de nacimiento reflejara el nombre por el cual se sentía identificado y deseaba ser llamado.

Asimismo, un examen armonioso del resto de nuestro ordenamiento jurídico disipa cualquier duda de que los cambios de nombres o apellidos en un certificado de nacimiento requieran demostrar la existencia de circunstancias excepcionales o errores en el mismo. Así, por ejemplo, mediante la <u>Ley de asuntos no contenciosos ante notario</u>, Ley Núm. 282-1999, 4 LPRA secs. 2155-2166, la Asamblea Legislativa autorizó la competencia concurrente de los notarios para conocer y tramitar, entre otros asuntos, los procedimientos de corrección de actas

que obren en el Registro Demográfico y de los cambios de nombres y apellidos. 4 LPRA sec. 2155(5).

A esos efectos, la Regla 125 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, establece que toda persona interesada en cambiar su nombre o apellidos, según constan inscritos en el Registro Demográfico, podrá tramitar el cambio a través de un notario. Entre los cambios autorizados, se encuentran:(1) sustituir un nombre por otro; (2) añadir un nombre al que se tiene; (3) variar el nombre en grado tal que afecte la manera de pronunciarlo; (3) eliminar o sustituir un apellido, y (4) corregir un alegado error en los apellidos inscritos. Íd. Como se puede apreciar, la corrección de errores en el certificado de nacimiento no es la única razón reconocida para modificar un apellido.

## B.

Por otro lado, y como bien apuntan los peticionarios, no podemos obviar que la controversia ante nos también presenta un matiz constitucional.[22] De hecho, el asunto de si el derecho constitucional a la crianza y la toma de decisiones en el ámbito familiar protege la prerrogativa de los padres y las madres de escoger o cambiar los nombres y apellidos de sus hijos e hijas ha sido estudiado extensamente. Véanse: C. F. W. Larson, Naming Baby: The Constitutional Dimensions of Parental Naming Rights, 80

---

[22]Tal y como señalan los peticionarios en su Moción de Reconsideración, en Delgado, Ex parte, supra, este Tribunal no tuvo ante sí un planteamiento de índole constitucional.

Geo. Wash. L. Rev. 159 (2011); J. S. Kushner, The Right to Control One's Name, 57 UCLA L. Rev. 313 (2009); B. S. Seng, Like Father, Like Child: The Right of Parents in their Children's Surname, 70 Va. L. Rev. 1303 (1984).

En esa dirección, la Carta de Derechos de la Constitución de Puerto Rico establece la inviolabilidad de la dignidad del ser humano como principio de interpretación cardinal para todos los derechos reconocidos en ella. Art. II, Sec. 1, Const. ELA, LPRA, Tomo I; Rexach v. Ramírez, 162 DPR 130, 143 (2004). De ese modo, "[l]a dignidad humana se constituye así como punto de referencia o valor jurídico supremo dentro del orden constitucional". Lozada Tirado et al. v. Testigos Jehová, 177 DPR 893, 944 (2010) (Rodríguez Rodríguez, J., Opinión de Conformidad). Es con ese preámbulo que nuestra Carta de Derechos consagra el derecho fundamental a la intimidad y la protección contra ataques abusivos a la honra, la reputación y la vida privada o familiar. Art. II, Sec. 8, Const. ELA, supra.

Al interpretar este conjunto de normas constitucionales, hemos resuelto que el Estado tiene una doble función en proteger los mismos: (1) "abstenerse de actuar de manera tal que se viole el ámbito de autonomía e intimidad individual" y (2) "actuar afirmativamente en beneficio del individuo". Lozada Tirado et al. v. Testigos Jehová, supra, pág. 910, citando a Soc. de Gananciales v. Royal Bank de P.R., 145 DPR 178, 201 (1998). En cuanto al derecho a la intimidad, en reiteradas ocasiones hemos expresado que este derecho se

lesiona, "entre otras instancias, cuando se limita la facultad de un individuo de tomar decisiones personales, familiares o íntimas". Siaca v. Bahía Beach Resort, 194 DPR 559, 585 (2016), citando a Soc. de Gananciales v. Royal Bank de P.R., supra, pág. 202. Véanse: Lozada Tirado et al. v. Testigos Jehová, supra; Pueblo v. Duarte Mendoza, 109 DPR 596 (1980); Figueroa Ferrer v. ELA, 107 DPR 250 (1978).

Asimismo, este Tribunal ha reconocido que los padres y las madres tienen un derecho fundamental a criar, cuidar y custodiar a sus hijos, protegido tanto por la Constitución de Puerto Rico como por la Constitución de Estados Unidos. Rexach v. Ramírez, supra, pág. 148. Al delinear los contornos de este derecho, hemos indicado que la zona de intimidad que cubre las relaciones familiares responde a que éstas desempeñan un rol cultural determinante en la transmisión de tradiciones y creencias entre las generaciones. Íd., pág. 146, citando a Roberts v. United States Jaycees, 468 US 609, 618-620 (1984).

Finalmente, adviértase que la prerrogativa de los padres y las madres de tomar decisiones respecto a sus hijos e hijas está reconocida como un derecho fundamental en el ordenamiento constitucional federal. Véanse: Washington v. Glucksberg, 521 US 702, 720 (1997); Santosky v. Kramer, 455 US 745, 753 (1982); Quillioin v. Walcott, 434 US 246, 255 (1978); Cleveland Board of Education. v. LaFleur, 414 US 632, 639-640 (1974). A la luz de esta normativa constitucional, varios tribunales federales han reconocido específicamente el derecho de los padres a escoger el apellido de sus hijos sin la intromisión arbitraria

del estado. A modo de ejemplo, véanse: <u>Jech v. Burch</u>, 466 F. Supp. 714 (D. Haw. 1979); <u>Sydney v. Pingree</u>, 564 F. Supp. 412 (S.D. Fla. 1983). Véase, además: L. A. Foggar, <u>Parents' Selection of Children's Surnames</u>, 51 Geo. Wash. L. Rev. 583 (1983).

Expuesto el marco legal del caso, examinemos la controversia que nos ocupa conforme al mismo.

### III

En este caso, el Registro Demográfico arguye que el procedimiento establecido en el Artículo 31 de la Ley del Registro Demográfico, <u>supra</u>, no estaba disponible para los peticionarios. Ello, en la medida en que éstos no basaron su solicitud en la corrección de un error, ni articularon la existencia de alguna otra "circunstancia excepcional" que legitimara su pedido. Lo anterior, insiste el Registro Demográfico, es cónsono con el tratamiento restrictivo que este Tribunal ha dado a la Ley del Registro Demográfico, <u>supra</u>. No podemos estar de acuerdo.

El argumento del Registro Demográfico, según avalado por los foros inferiores, carece del contexto necesario. No existe duda de que este Tribunal ha interpretado restrictivamente la Ley del Registro Demográfico, <u>supra</u>, en atención a su importancia socio-jurídica. Precisamente, ha sido a la luz de estas consideraciones que este Tribunal ha rehusado acceder a cambios que no han sido autorizados expresamente por la Asamblea Legislativa.

No obstante, hay que tener presente que el procedimiento para cambiar, adicionar o modificar un apellido **está autorizado expresamente** por la Ley del Registro Demográfico, supra. Más importante aún, el mismo no exige que se demuestren los criterios insistidos por el Registro Demográfico. Es decir, el lenguaje del Artículo 31 de la Ley del Registro Demográfico, supra, **no limita** el procedimiento allí instituido a la corrección de errores en los certificados de nacimientos.

Desde luego, la conclusión anterior no dispone de la controversia. Aún establecido que los peticionarios podían solicitar el cambio o modificación de los apellidos de sus hijos por motivos no correctivos, lo cierto es que la mera presentación de su solicitud no garantiza que sea autorizada. En todo caso, la decisión recae en el juicio del tribunal, quien debe justipreciar los méritos de la solicitud. Además, es menester tener presente el derecho que la propia ley le reconoce al Estado de intervenir en el procedimiento para formular las objeciones que entienda procedentes. Por tanto, el desenlace de este caso debe ser el resultado de la contraposición de los méritos de la solicitud presentada por los peticionarios a la luz de las objeciones formuladas por el Registro Demográfico.

De un lado de la balanza están los intereses de los peticionarios, quienes solo pretendían modificar los certificados de nacimiento de sus hijos a los fines **exclusivos** de unir por un guion sus apellidos paterno y materno para que leyeran "Roig-Moyka". De entrada, éstos

expresaron **bajo juramento** que la solicitud se hacía "[d]e buena fe, sin la intención de evadir deudas o compromisos de índole alguna y sin visos de ilegalidad de cualquier tipo".[23] Más bien, la solicitud se basó en el interés del matrimonio de preservar el uso del apellido materno. Distinto a los foros inferiores, nuestro análisis no toma livianamente el valor de los motivos articulados por los esposos Roig-Moyka. La consolidación de los apellidos paterno y materno mediante la inclusión de un guion es un uso y costumbre legalmente aceptado a nivel mundial.[24]

Más importante aún, los foros inferiores fallaron en siquiera tener presente que la prerrogativa de los peticionarios de modificar los apellidos de sus hijos está protegida constitucionalmente. Como vimos, la Constitución de Puerto Rico protege el derecho de los peticionarios de tomar decisiones personales e íntimas dentro de su seno familiar, y lo mismo ocurre bajo la Constitución de Estados

---

[23]Véase, Petición, apéndice del certiorari, pág. 45. Junto a ésta, los peticionarios también anejaron los documentos de apoyo siguientes: (1) copia de sus tarjetas de identificación (licencia de conducir); (2) copia de su certificado de matrimonio; (3) copia de sus certificados de nacimiento respectivos y los de ambos menores; (4) certificación negativa de antecedentes penales; (5) certificación negativa de deuda de pensión alimentaria; (6) certificación negativa de deuda con el Departamento de Hacienda; (7) certificación negativa de deuda con el Centro de Recaudaciones de Ingresos, y (8) certificación negativa de quiebra.

[24]Incluso, en Estados Unidos ha cobrado auge la práctica entre familias latinas de procurar tal cambio en aras de preservar el apellido materno. Véase en general: Y. M. Cherena Pacheco, Latino Surnames: Formal and Informal Forces in the United States Affecting the Retention and Use of the Maternal Surname, 18 T. Marshall L. Rev. 1 (1992).

Unidos. Lo solicitado por los esposos Roig-Moyka y los motivos para ello, se resguarda perfectamente dentro del marco de intimidad protegido por nuestro andamiaje constitucional. En fin, estamos ante una decisión que estriba indudablemente en la esencia propia del derecho de los peticionarios a criar a sus hijos y a escoger cómo llamarlos.

Ante esta multiplicidad de consideraciones, el Registro Demográfico aún insiste en que tiene razones de peso para oponerse al cambio solicitado por los esposos Roig-Moyka. Un examen minucioso y desapasionado de las mismas nos lleva a concluir que **ninguna** justifica denegar lo solicitado por los esposos Roig-Moyka. Así, por ejemplo, el Registro Demográfico plantea que lo solicitado por los peticionarios equivale a la creación de un "nuevo apellido" que suprimiría el tracto familiar que el certificado de nacimiento de los menores pretende publicar. Específicamente, arguye que sus certificados de nacimiento se "impugnaría[n] de su propia faz" porque estos aparentarían tener un apellido "totalmente diferente al de sus padres". Empero, resulta en extremo difícil concebir cómo lo solicitado suprime o de modo alguno varía los datos ya existentes en el certificado de nacimiento de ambos menores. De haber sido autorizado el cambio, el dato registral en cuestión hubiera permanecido igual: que Carlos Andrés **"Roig-Moyka"** y Carlos Daniel **"Roig-Moyka"** son hijos de Rafael Luis **Roig** y Ana Servanda **Moyka.**

Como segundo argumento, el Registro Demográfico también plantea que por "Roig-Moyka" ser a un "solo apellido", esto crearía un disloque en la medida en que no sabrían en cuál encasillado de sus constancias Registrales colocar el mismo; si en el encasillado del apellido paterno o materno de los menores. Este planteamiento -de naturaleza puramente administrativa- también es insuficiente para validar la pretensión del Estado, pues existen alternativas para acomodar el cambio solicitado, sin tener que prohibirlo.

A modo de ejemplo y sin intención de ser exhaustivo, entiendo que el Registro Demográfico bien puede expedir los certificados de nacimiento de los menores con los nombres "Carlos Andrés Roig-Moyka" y "Carlos Daniel Roig-Moyka" y hacer las anotaciones correspondientes en los asientos registrales para consignar el acto de consolidación autorizado. Igualmente, el Registro Demográfico puede adicionar un nuevo encasillado en sus registros para identificar propiamente aquellos apellidos paterno y materno que han sido consolidados, como se pretende en este caso.

Como reclamo final, el Registro Demográfico también invita a que se confirme lo resuelto por los foros inferiores, trayendo a la consideración de este Tribunal que "[h]oy podrá ser un guion, mañana podría ser la fusión de apellido y pasado mañana podría ser cambiar totalmente el apellido sin justificación, porque así lo decida la

persona".[25] Igualmente, sostiene que autorizar el cambio "[p]odría provocar que se permita el abuso indiscriminado del mecanismo de cambio de nombre y apellido" y que ello a su vez "[p]rovocaría que se pueda prestar el cambio de nombre para fraude".[26] En fin, que acceder a lo solicitado por los peticionarios "[a]tentaría contra la buena marcha del ordenamiento jurídico y la estabilidad social, política, económica y judicial del país".[27]

Este razonamiento, que no es otra cosa que la enumeración de un desfile de calamidades y teorías apocalípticas, es falaz y no convence. Si bien este Tribunal viene llamado a tomar estos planteamientos con seriedad, también lo debe hacer con sentido común y reconociendo las garantías discutidas que amparan a los peticionarios. De ese modo, es de observar que el razonamiento propuesto por el Registro Demográfico resulta en extremo especulativo y se aparta absurdamente del cambio particular solicitado en este caso. Más curioso aún, es evidente que el mismo ignora e incluso contradice lo que el propio Registro Demográfico acepta y defiende: que el éxito de **toda** solicitud para el cambio, adición o modificación de un nombre o apellido está guiado por el juicio del tribunal y por el insumo de las objeciones que en su día -y de así entenderlo- el Estado pueda presentar.

---

[25]Escrito Mostrando Causa, pág. 2.

[26]Íd.

[27]Íd.

En ese sentido, no debe existir duda de que cada caso habrá de ser juzgado bajo sus propias circunstancias.

## IV

En fin, el derecho a solicitar la consolidación de los apellidos paterno y materno de una persona por motivos no correctivos está, como cuestión de Derecho, autorizada por el Art. 31 de la Ley del Registro Demográfico, supra. No obstante, el éxito de esa solicitud está condicionado al juicio del tribunal, quien, conforme al mencionado artículo, habrá de justipreciar las razones detrás de la solicitud y las objeciones que el Estado pueda formular.

Cuando una de las ramas de gobierno vulnera o ignora derechos constitucionales, no aquilatar y ser garantes de esos derechos individuales en virtud de la regla de autolimitación judicial equivale a dar un remedio, en ocasiones, limitado. Es decir, cuando una rama de gobierno se inmiscuye indebidamente con la Constitución, un fundamento puramente estatutario puede ser insuficiente para restituir el sano balance de poderes. En este caso, la solución judicial adecuada y completa ameritaba adentrarnos en la esfera constitucional como garantes de las libertades individuales. Así lo advertí en Roig Pou y otros v. Reg. Demográfico, res. el 15 de noviembre de 2018, 2018 TSPR 184. La tendencia de este Tribunal de evitar adentrarnos en esas esferas del Derecho obvía que la mayor deferencia que debe exhibir la Rama Judicial es al Pueblo.

En este caso, la razón de los peticionarios en querer consolidar los apellidos paterno y materno de sus hijos obedece a su decisión de preservar el uso del apellido materno. Lo anterior, como parte de sus prerrogativas constitucionalmente protegidas de tomar decisiones íntimas y personales en el seno familiar respecto a sus hijos. Esas justificaciones pesan. Y como ninguna de las objeciones formuladas por el Estado logró mover la balanza en favor de su postura, estoy conforme con lo resuelto por este Tribunal.

                                    Luis F. Estrella Martínez
                                         Juez Asociado